COMMONWEALTH *vs.* PHILIP WALKER.

Suffolk. September 14, 1992. - October 9, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Homicide. Robbery. Felony-Murder Rule. Practice, Criminal*, Capital case, Assistance of counsel, Instructions to jury, Argument by prosecutor. *Alibi.*

At a murder trial there was an adequate basis in the evidence to permit an inference that a robbery had occurred and the trial judge correctly instructed the jury on the rule of felony-murder. [554-556]

At a murder trial no substantial likelihood of a miscarriage of justice was created by the judge's brief reference to certain evidence in his instructions to the jury. [556-557]

The record of a murder trial did not support the defendant's contention that his trial counsel provided constitutionally defective representation by abandoning an allegedly viable claim of alibi. [557-560]

Nothing in the prosecutor's closing argument at a murder trial provided any basis for the grant of the defendant's motion for a new trial. [560-561]

No reason appeared for this court to exercise its power under G. L. c. 278, § 33E, to reduce a verdict of first degree murder or to order a new trial. [561]

INDICTMENT found and returned in the Superior Court on November 15, 1976.

The case was tried before *Vincent R. Brogna*, J.

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*Brian J. Carney*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. On May 20, 1977, the defendant was convicted by a jury in the Superior Court of murder in the first degree. The defendant filed a timely pro se notice of appeal which was dismissed by the trial judge in 1978. A single jus-

tice of this court reinstated the defendant's appeal in 1991. Represented by new counsel on appeal, the defendant argues that (1) there was insufficient evidence to warrant submission of the case to the jury on a felony-murder theory; (2) part of the trial judge's instructions on felony-murder improperly invaded the province of the jury; (3) his trial counsel furnished him with inadequate assistance by abandoning a viable claim of alibi; (4) the prosecutor engaged in overreaching, improper and unconstitutional final argument; and (5) he is entitled to relief under G. L. c. 278, § 33E (1990 ed.). None of these issues was preserved by an objection or in any other manner. We therefore apply the standard of review set forth in G. L. c. 278, § 33E, and inquire whether there is a substantial likelihood that a miscarriage of justice has occurred. *Commonwealth* v. *Garcia*, 379 Mass. 422, 439 (1980). This inquiry will dispose of the defendant's claim that his trial counsel provided ineffective assistance by abandoning a viable alibi defense. *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 (1992). We thus ask whether "there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion." *Id.* at 682. We conclude that no such error appears. We also conclude that there is no reason to question the fairness of the verdict under G. L. c. 278, § 33E. Accordingly, we affirm the defendant's conviction.

A detailed recitation of the evidence at the trial is unnecessary. It is sufficient to point out that the Commonwealth's case against the defendant principally depended on the testimony of Mildred Alexander. Alexander testified that, on the evening of September 29, 1975, she was riding through the streets of Columbia Point housing project with the victim, Preston Stewart, in the victim's automobile. She had been seeing Stewart, a married man, daily for some time. The vehicle was brought to a stop by Duane Sawyer, the defendant's half-brother. The victim left the automobile and stood nearby engaged in conversation with Sawyer and the defendant. Alexander heard a loud noise and saw the victim fall to

the sidewalk. She then saw the defendant holding a short, black-barreled gun in his right hand. The defendant stepped toward the victim's prone body, bent over, and fired a single shot into the victim's head. The defendant and Sawyer immediately fled.

1. In addition to instructing the jury on the elements of first degree murder by reason of deliberate premeditation, and the elements of second degree murder, the trial judge instructed the jury that a conviction of first degree murder could be returned if they found that the homicide had occurred in the course of a felony punishable by life imprisonment. The felony in question was robbery.

The basis in the evidence for the instruction on the rule of felony-murder is the following. Boston police officer Maggie Celester arrived at the scene of the killing no later than five minutes after it had occurred. Celester accompanied the victim's body to the hospital where she spoke with the victim's wife. The victim's wife told Celester that the victim had left his house around 8:45 P.M. on September 29, about forty-five minutes before the murder. In cross-examination of Celester, the defendant's trial counsel brought out the information set forth in the margin.[1] In addition, Alexander testified that she had been with the victim up until he was killed, and that the two had spent most of their time together riding around and talking in the victim's automobile. Alexander also testified that she and the victim "got out [of the automobile] for a while probably but we was together at all times." She further stated that they had not made any stops for gasoline or food.

The defendant argues that there was insufficient evidence upon which the trial judge could base a jury instruction on

---

[1] DEFENSE COUNSEL: "Did she [the victim's wife] make any further statement as to money that may have been on the victim's person?"

OFFICER CELESTER: "She said he had a hundred and twenty dollars when he left home."

DEFENSE COUNSEL: "When he left home. Did your investigation turn up any money on the scene?"

OFFICER CELESTER: "No, it didn't."

felony-murder. Specifically, the defendant maintains that because Officer Celester did not testify that no money had been found on the victim's *person* at the scene, there is no evidence from which the jury could have found beyond a reasonable doubt that money even had been taken from the victim. Beyond this point, the defendant maintains that, even if the evidence warranted an inference that no money had been found on the victim after the shooting, there still was no adequate basis in the evidence to permit an inference of robbery, thereby permitting a first degree murder verdict on a felony-murder theory. The defendant concludes that, in light of the jury's general verdict, after their consideration of instructions on premeditated murder and felony-murder, the defendant is at least entitled to a new trial because the theory of murder on which the jury based conviction cannot be clearly ascertained.

We think the testimony recounted above provided a basis for a felony-murder instruction. Officer Celester's testimony, considered in context, permitted the inference that she, and other investigating personnel who arrived at the scene soon after the shooting, had found no money on the victim's person. The testimony of the victim's wife that the victim had left the house about forty-five minutes before the shooting with $120 on his person, combined with Alexander's testimony that she and the victim had been constantly together and had not spent money for gasoline or food, warranted an inference that he had been robbed. The fact that there was evidence of other bystanders at the scene who might have taken the victim's money did not negate that inference, but merely provided a consideration for the jury to evaluate as to the weight of the underlying evidence.[2] See *Commonwealth*

---

[2]The theory of robbery also was not inconsistent with the Commonwealth's main theory of motive. That theory was that the defendant had killed the victim to gain revenge for the victim's having previously shot the defendant in the face leaving him disfigured. The evidence was sufficient for the Commonwealth to maintain as well that the defendant intended to rob the victim along with exacting vengeance for the prior assault.

v. *Medeiros*, 354 Mass. 193, 197 (1968), cert. denied sub nom. *Bernier* v. *Massachusetts*, 393 U.S. 1058 (1969).

While we agree that the evidence of robbery was less than compelling, we consider the evidence to be closer to the evidence described in *Commonwealth* v. *Rego*, 360 Mass. 385 (1971), in which it was decided an inference of robbery was warranted, than to the evidence in the cases referred to by the defendant in which the inference was not found to be justified.[3] We note that the trial judge gave a fair instruction on the evidence supporting the felony-murder theory, and we perceive nothing in the supplemental instruction on that theory which would create a substantial likelihood of a miscarriage of justice.

2. Apart from the issues just discussed, the defendant argues that the trial judge's reference in his instruction to the jury that "the evidence was that when the [victim's] body was found there was no money," see note 4, *infra*, created a substantial likelihood of a miscarriage of justice because the instruction misstated the evidence[4] and allowed the jury to draw an unsupported inference which could have improperly pushed them further toward a finding of felony-murder.

The trial judge's reference was brief, and we think the jury would have known that the judge was just stating what he

---

[3]The defendant maintains that this case resembles *Commonwealth* v. *Mandile*, 403 Mass. 93 (1988), and *Commonwealth* v. *Lamrini*, 392 Mass. 427 (1984), in which we found insufficient evidence that money was taken from the victim to support an inference of intent to rob. We disagree. In *Mandile*, the Commonwealth introduced no evidence that money was missing from the victim's house. In fact, neither the victim's wallet nor a "donation bowl" where the victim was known to keep money had been disturbed. *Id.* at 97. In *Lamrini*, the only evidence of money on the victim's person came from a witness who stated firmly that the victim "did not have much money" with him on the evening on which he was murdered. *Lamrini, supra* at 433 & n.8.

In contrast, in *Rego*, the victim's wife gave him $30 before he left the house. When his body was discovered, he had only $1.28 in change. *Commonwealth* v. *Rego*, 360 Mass. 385, 387-389 (1971). We concluded that, based on this and other evidence, the jury could infer that the victim was killed during a robbery. *Id.* at 390.

[4]It will be recalled that the actual testimony by Officer Celester was that no money was found "on the scene" of the murder.

recalled of the testimony. The instruction did not mandate that the jury draw any specific inference. In fact, directly following reference to the evidence, the trial judge instructed the jury that while an inference of robbery was permissible, it was definitely not required. When the instruction is fairly read in light of the whole charge, it is evident that the trial judge did not foreclose the jurors from inferring that a robbery had not occurred. *Commonwealth* v. *Mitchell*, 12 Mass. App. Ct. 354, 356-357 (1981). The trial judge's additional instructions on the role of the jurors as independent fact finders support the conclusion that nothing was said that could have impermissibly directed them to a finding. See *Commonwealth* v. *Murray*, 396 Mass. 702, 705-709 (1986). We conclude that the reference does not provide a basis for finding a substantial likelihood that a miscarriage of justice has occurred.

3. The defendant argues that his trial counsel provided constitutionally defective representation by abandoning a viable claim of alibi. This issue arose in the following context.

After his arrest, the defendant was interrogated by Sergeant Francis Whalen of the Boston police. The interrogation was tape-recorded and transcribed. During the interview, the defendant disclosed that the victim had shot him in the face in May, 1975, with a shotgun. As a result of the assault, the defendant had been hospitalized and received plastic surgery to correct the wounds. He remained disfigured. The prosecutor introduced the interrogation in evidence (through the testimony of Sergeant Whalen, who read the transcript to the jury) to show that the defendant had a motive to kill the victim because the victim had shot and disfigured him.

In the course of his interrogation, the defendant stated that he had not been in Boston on the day the victim was murdered, but that he had been in Pontiac, Michigan, from about the beginning of September, 1975, until September, 1976, when he returned for treatment to his face. In the interrogation, the defendant identified his brother, Duane, and his sister, Shellena, as residents of 64 Coleuse Street, Pontiac, Michigan.

Immediately after Sergeant Whalen completed his testimony, both the Commonwealth and the defendant rested. An unrecorded lobby conference was then held after which the trial judge made the following statement for the record:

"I just wanted to put on the record in a lobby conference we discussed the brief reference in the purported statement of the defendant to Sergeant Whalen that he was in Pontiac. It has been agreed by counsel that neither in argument nor in the charge will any reference be made to alibi. That I won't say anything about alibi in the charge and neither counsel will say anything about it in the argument."

Closing arguments of both counsel proceeded in accordance with the above agreement. The defendant now contends that his trial counsel forfeited a viable claim of alibi and in so doing provided constitutionally deficient representation. He suggests that "[a]t best, the jurors must have assumed, wrongly, that the claim of alibi was not evidence for their consideration, and . . . [a]t worst, . . . that counsel disbelieved it." The defendant concludes that trial counsel's alleged incompetence denied him his constitutional right to a fair trial.

The record does not support the defendant's contention that his trial counsel failed to exercise customary skills and diligence expected of a reasonably competent attorney in similar circumstances. The defendant did not testify to support any claim of alibi, and there is no explanation made for the absence of his brother and sister who would be expected to corroborate the claim. There was also no response to the Commonwealth's motion for the disclosure of the names of any alibi witnesses. See *Commonwealth* v. *Edgerly*, 372 Mass. 337, 344 (1977) (pending adoption of a notice of alibi rule to the Massachusetts Rules of Criminal Procedure, applicable interim procedure explained: Commonwealth may move for disclosure of alibi witnesses with reciprocal discovery of rebuttal witnesses). These considerations suggest that

the defendant's trial counsel was not giving up anything. They suggest that counsel had little or nothing to work with to support the claim of alibi, that attempting to press it might have exposed the defendant's case to damaging counterattack by the Commonwealth, and that defense counsel had inserted the claim of alibi in the case indirectly where an astute jury could consider it on their own in light of the defendant's core claim that Alexander was not a credible witness. In substance, the approach taken by defendant's trial counsel left alibi as a live issue before the jury while downplaying the lack of corroborating evidence and preventing the prosecutor from commenting on the weakness of the claim. See *Commonwealth* v. *Smith*, 29 Mass. App. Ct. 449, 456 (1990).

This conclusion becomes even clearer when the tactic is evaluated with the defendant's main claim — that Mildred Alexander's testimony, on which the Commonwealth's case depended, could not be believed beyond a reasonable doubt. This claim was disclosed at the outset by the defendant's trial counsel in his opening statement[5] and pursued vigorously at trial. The claim was substantial because, as the defendant's trial counsel brought out before the jury, Alexander: (1) had seen the defendant shortly after the murder and said nothing to him or to the police about the killing; (2) had failed to come forward and identify the defendant as the alleged murderer until seven months after the homicide; (3) had provided statements to the police, and testimony before

---

[5]After explaining to the jury the burdens imposed by law on the Commonwealth to prove its case, the defendant's trial counsel stated the following in his opening:

"But I want you to consider [these burdens] because, especially in this case, because as [the prosecutor] indicated, this case primarily turned on one witness, Mildred Alexander, who [the prosecutor] made mention of in his opening argument, and listening to Miss Alexander's testimony, I ask that you pay particular attention to the details of her testimony, to the credibility that her testimony carries with it, how believable is what she says and consider that in light of the Commonwealth's obligation and burden to prove its case beyond a reasonable doubt and a presumption of innocence."

the Dorchester District Court and the grand jury, that were inconsistent, on what could be found to be material points, with her testimony at trial; (4) within hours after the murder of her boyfriend, had gone out with another man; (5) lacked memory of details that would be expected of someone who had witnessed an execution-style murder like this one; and (6) harbored ill-will toward the defendant, and, therefore, a bias to testify against him because of incidents in a past relationship with him.

Far from recklessly abandoning a viable claim that the defendant may have had, as trial counsel did in cases such as *Commonwealth* v. *Street*, 388 Mass. 281 (1983), and *Commonwealth* v. *Westmoreland*, 388 Mass. 269 (1983), the defendant's trial counsel, in what clearly appears to be a matter of strategy, put forward a strong claim that Alexander should not be believed while still allowing the jury to consider the defendant's self-serving statements about his presence in Pontiac, Michigan, for whatever those statements were worth.[6]

4. There is nothing in the prosecutor's closing argument which would call for a new trial.

(a) The comment made by the prosecutor as to who might be able to tell the jury about what happened at the scene of the murder was at worst an oblique reference to the defendant and could not have influenced the jury particularly when considered with the trial judge's instruction on the defendant's absolute right not to take the stand. See *Commonwealth* v. *Phoenix*, 409 Mass. 408, 427-428 (1991).

(b) The prosecutor's argument explaining why Alexander delayed in coming forward to identify the defendant as the murderer was fairly based on Alexander's testimony and inferences that could be drawn therefrom. Contrast *Commonwealth* v. *Sperrazza*, 379 Mass. 166, 171 (1979), with *Commonwealth* v. *Clary*, 388 Mass. 583, 592 (1983).

---

[6]This trial took place fifteen years ago, when unrecorded lobby conferences were more common. We urge that a record be kept of such conferences, or at least of the reasons leading to an agreement of the sort made here, in order to forestall possibly groundless appellate issues.

(c) As has been explained, the evidence warranted a finding that the killing occurred in the course of a robbery. The prosecutor's comments on that point were consistent with the evidence and proper.

5. There is no reason to exercise this court's power under G. L. c. 278, § 33E, to reduce the verdict or order a new trial.

The evidence supports a first degree murder conviction. See *Commonwealth* v. *Schnopps*, 390 Mass. 722, 727-728 (1984) (first degree murder conviction upheld where evidence showed that defendant lured wife to apartment and fired the final, fatal shot while she was lying on the floor); *Commonwealth* v. *Moran*, 388 Mass. 655, 656, 662 (1983) (first degree murder conviction upheld where evidence showed that fatal shot was fired point blank into victim's head as he lay wounded on the floor). The defendant's point blank shot into the victim's head, as he lay helpless on the sidewalk, was a deliberate act which the jury could have found was motivated by an earlier incident in which the victim had assaulted the defendant. The jury's verdict is a just one and should not be disturbed.

*Judgment affirmed.*