## JUDITH CORSON *vs.* COMMONWEALTH.

Suffolk. June 10, 1998. - September 22, 1998.

Present: WILKINS, C.J., ABRAMS, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Double jeopardy, Required finding. *Fraud. Insurance,* Fraud and concealment.

Evidence at the trial of indictments arising from the theft of the defendant's motor vehicle was insufficient as a matter of law for submission of the case to the jury; consequently, where the case had been submitted to the jury, the jury had deadlocked, and a mistrial was declared, the defendant's motion to dismiss the indictments on double jeopardy grounds should have been allowed. [197-201]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 12, 1996.

The case was heard by *Lynch,* J.

*Peter F. Carr, II,* for the plaintiff.

*Brian P. Burke,* Assistant Attorney General, for the Commonwealth.

IRELAND, J. The sole issue before us in this appeal is whether the trial judge erred in refusing to dismiss three indictments against Judith Corson (defendant), following a mistrial that resulted from a deadlocked jury. The defendant argues that dismissal is warranted because the evidence presented by the Commonwealth at her trial was insufficient as a matter of law to allow the indictments to go to the jury. Although this is a close case, we agree with the defendant and remand for the entry of an order dismissing the indictments.

This case stems from the theft of the defendant's 1985 Mercedes Benz 380SL roadster on February 14, 1993. A jury would be warranted in finding the following facts. The defendant had been an insurance agent for more than twenty years and was the sole principal of her own insurance agency. In addition to the 1985 Mercedes Benz, which the defendant owned outright, she recently had leased a 1993 Mercedes Benz. The defendant and

her boyfriend, Allan Leavitt, drove the 1985 Mercedes Benz to a restaurant in Boston on the evening in question. The defendant parked the car on a street some distance from the restaurant. At approximately 8 P.M., the defendant gave Leavitt her keys to retrieve the car, while she waited inside the restaurant. He returned some time later and reported the car missing. The defendant and Leavitt immediately went to a nearby police station to report the car stolen.

The defendant promptly filed a theft claim with her insurance company. In her statement to the insurance company (which was recorded with her knowledge and consent), the defendant indicated that she had received only one set of keys upon purchasing the car and had never made any duplicates. On March 25, 1993, the insurance company paid $24,805 to the defendant to cover her claim.[1] In her statement to the police on the night the car was stolen, the defendant had estimated the value of the car to be $24,000.

On August 2, 1993, Leavitt was stopped by United States customs agents in Champlain, New York, while driving the defendant's car into the United States from Canada. Leavitt told the customs agents that the car belonged to the defendant and that he had her permission to drive the car. He initially gave the customs agents a telephone number for the defendant that he knew was incorrect. After verifying that the car was still reported as stolen, the customs agents placed Leavitt in the custody of the New York State police. Two days later, Leavitt pleaded guilty in New York to the crime of unauthorized use of a motor vehicle and paid a $500 fine with funds provided by the defendant. As a condition of his plea, Leavitt signed a statement implicating the defendant in the theft of the car. Leavitt subsequently pleaded guilty in Massachusetts to the crimes of concealing a motor vehicle with intent to defraud an insurer and larceny by false pretenses over $250. In his plea colloquy, he once again implicated the defendant in the theft of the car.[2]

On August 12, 1993, the defendant gave a statement to a

---

[1]A second insurance company also paid $4,073 to the defendant to cover her claim for loss of personal belongings that were in the car at the time of the theft.

[2]Leavitt's subsequent testimony at the defendant's trial conflicted with both his plea colloquy and his signed statement. In it, he repudiated his earlier statements and said that the defendant was not involved with the theft. See *infra* at 195-196.

special investigator for the insurance company. The statement was not recorded. Instead, the investigator wrote the statement out himself, and then the defendant signed it. In the statement, the defendant indicated that she had two sets of keys to the car and had given one to Leavitt. However, the defendant also stated that only one key was required to operate the car.

A Suffolk County grand jury returned four indictments against the defendant on July 6, 1995, charging her with concealing a motor vehicle with intent to defraud an insurer (in violation of G. L. c. 266, § 27A), providing a false written statement to the police (in violation of G. L. c. 268, § 39), insurance fraud (in violation of G. L. c. 266, § 111B), and larceny by false pretenses exceeding $250 (in violation of G. L. c. 266, § 30).

At the defendant's trial, a New York State trooper testified that he called the defendant shortly after taking Leavitt into custody. The trooper testified that the defendant denied having reported the car as stolen and said that Leavitt had her permission to drive the car. The trooper also testified that the defendant did not appear to be upset or surprised when he told her about recovering the car and taking Leavitt into custody. On cross-examination, however, the trooper conceded that neither his contemporaneous notes of his conversation with the defendant, nor the affidavit he signed in October, 1993, mentioned that she had denied reporting her car stolen or had said that Leavitt had her permission to drive the car. On the contrary, the notes and affidavit each indicated that the defendant stated the exact opposite. The trooper also conceded that he had been unaware that a customs inspector had called the defendant earlier that evening.

Leavitt testified that he lied to the customs agents to avoid incriminating himself. He testified that his signed statement had been coerced and that he signed it because he otherwise would not have been able to leave police custody.[3] He also testified that after leaving the restaurant ostensibly to retrieve the car on the evening of February 14, 1993, he drove it to a parking lot near the airport, boarded a waiting shuttle van that took him to an airport terminal, and returned to the restaurant by taxi, all within "approximately" twenty minutes. He then told the defendant that the car was missing. Several days later, he

---

[3]Leavitt subsequently filed a complaint with judicial and police authorities in New York, alleging that the police subjected him to intimidation, threats of physical abuse, defamatory remarks, and vulgarities and threats.

returned to the parking lot and drove the car to Canada, where it remained until the night he was arrested while trying to return it to the United States. He testified that he was in desperate financial condition at that time and that he had intended to sell the car. He also testified that the defendant had nothing to do with the theft of the car and that he alone had conceived and executed the plan.

At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty on all four indictments. Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). The judge denied the motion, but stated that this was "as close a case" as he had seen for allowing the motion. The defendant then rested without presenting any evidence and renewed her motion for a required finding of not guilty. The judge denied the motion, but again commented as to how close the case was. After three days of deliberation, the jury returned a verdict of not guilty on the indictment charging the defendant with providing a false statement to the police. The jury deadlocked on the other three indictments, causing the judge to declare a mistrial.

The defendant immediately renewed her motion for a required finding of not guilty. The judge treated this as a motion to dismiss the indictments on double jeopardy grounds and, after a hearing, denied it. The defendant petitioned a single justice of this court, pursuant to G. L. c. 211, § 3, requesting the dismissal of the remaining indictments on double jeopardy grounds. The single justice denied the petition. The defendant appealed to the full court, pursuant to S.J.C. Rule 2:21, 421 Mass. 1303 (1995).[4] We authorized an appeal "according to the regular appellate process."

In cases such as this, where the judge declares a mistrial because of a hung jury and the defendant has moved for a required finding of not guilty, the Commonwealth must have presented evidence legally sufficient to support a conviction at the first trial, or jeopardy terminates for State law purposes, and "the retrial of the defendant . . . would violate this State's common law principles of double jeopardy." *Kater* v. *Commonwealth*, 421 Mass. 17, 19 (1995), citing *Berry* v. *Commonwealth*, 393 Mass. 793, 798 (1985). The defendant is "entitled to a review of the legal sufficiency of the evidence before another trial takes place." *Berry, supra.* We must review

---

[4]Shortly after the appeal was filed, the single justice allowed the defendant's motion to stay retrial proceedings pending appeal.

the evidence, together with permissible inferences therefrom, in the light most favorable to the Commonwealth, and then decide whether "a rational trier of fact could have found each essential element of the crimes charged beyond a reasonable doubt." *Kater, supra* at 20, citing *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). See *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988), quoting *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979).

The evidence may be entirely or mainly circumstantial. See *Commonwealth* v. *Donovan*, 395 Mass. 20, 25 (1985), and cases cited; *Commonwealth* v. *Chery*, 36 Mass. App. Ct. 913, 913-914 (1994). In such cases, inferences need not be necessary, only reasonable and possible. *Commonwealth* v. *Bennett*, 424 Mass. 64, 68 (1997), and cases cited. However, the evidence will not be sufficient to withstand the defendant's motion here unless it allows us to do more than "find that there was some record evidence, however slight, to support each essential element of the offense." *Mandile, supra*, quoting *Latimore, supra* at 677. Nor will the evidence be sufficient if it merely piles "inference upon inference or conjecture and speculation," *Mandile, supra*, quoting *Commonwealth* v. *Ferguson*, 384 Mass. 13, 18 (1981), or if it tends "equally to support either of two inconsistent propositions." *Commonwealth* v. *Rhoades*, 379 Mass. 810, 817 (1980). See *Ferguson, supra* at 19; *Commonwealth* v. *Wilborne*, 382 Mass. 241, 244 (1981).

The defendant argues that the Commonwealth failed to present sufficient evidence at her trial to establish that she had the requisite criminal intent to commit any of the crimes charged or that she intentionally participated in the commission of those crimes with Leavitt. The Commonwealth counters that a jury could make an inference beyond a reasonable doubt of the defendant's involvement with the planning and execution of the theft from at least six pieces of evidence, namely (1) the closeness of the defendant's estimate for the value of the car to the amount the insurance company paid to cover her claim; (2) Leavitt's statements to the customs agents; (3) the defendant's statements to a New York State trooper; (4) the defendant's statements concerning the number of keys to the car; (5) the amount of time required for Leavitt to make his trip to dispose of the car on the night it was stolen; and (6) Leavitt's inability to know in advance what traffic conditions would be like on that night.

For the first four of these pieces of evidence, the inferences that the Commonwealth urges on us do not meet the requirement of reasonableness. See *Bennett, supra,* and cases cited. The Commonwealth argues that the defendant's knowledge of the approximate value of her car supports an inference that she was involved in the planning and execution of the theft.[5] The inference is unreasonable because of the defendant's professional knowledge and experience and her recent personal experience in the car market.[6] Similarly, the Commonwealth argues that Leavitt's statements to the customs agents support an inference that he believed the defendant would corroborate his story. The inference is unreasonable, because, if Leavitt had expected the defendant to corroborate his story, he would not have given the customs agents a telephone number for her that he knew was incorrect.

The Commonwealth also argues that the defendant's failure to act surprised or upset when the New York State trooper told her about recovering the car and having Leavitt in custody supports an inference that she was attempting to cover up her guilt. The inference is unreasonable because the defendant had already received that information from the customs inspector's earlier telephone call and thus had no reason to show any particular response.[7]

The Commonwealth further argues that the defendant's initial

---

[5]The Commonwealth incorrectly stated that the defendant estimated the value of her car to be $25,000 and that her estimate was thus within "a couple hundred dollars" of the amount the insurance company paid to cover her claim. The error has no bearing on our conclusion here.

[6]Common sense also dictates that there are many reasons why an individual might be able to closely estimate the value of a substantial asset such as a car. See *Commonwealth* v. *Arias,* 29 Mass. App. Ct. 613, 618 (1990), and cases cited; *United States* v. *Smith,* 680 F.2d 255, 260 (1st Cir. 1982), cert. denied, 459 U.S. 1110 (1983). The Commonwealth's argument would potentially penalize such individuals by making them subject to an inference of guilt for an otherwise prudent act.

[7]The customs inspector testified at the defendant's trial. However, on a motion from the defendant prior to cross-examination, the judge struck the testimony from the record because of the Commonwealth's failure to provide adequate discovery to the defendant concerning the testimony. It borders on bad faith for the Commonwealth to attempt to take advantage of the trooper's testimony in this regard, knowing that it otherwise could have been refuted easily, but for the Commonwealth's own misconduct.

The Commonwealth also suggested that the defendant's inconsistent statements to the trooper (concerning whether she had reported the car stolen and whether Leavitt had her permission to drive the car) support an inference that

statement that there was only one set of keys supports an inference that she had sole access to the car and that Leavitt thus could not have driven it to Canada without her participation. The Commonwealth also argues that the defendant's later statement to the insurance company investigator that there were two sets of keys supports an inference of her consciousness of guilt. Neither of these inferences is reasonable. The defendant's statement to the investigator was not recorded. Although we cannot be certain of the exact wording of his questions or the defendant's responses, it appears that they both used the terms "keys" and "sets" of keys interchangeably without attaching any substantive distinction to these terms. The defendant's uncontroverted statement indicated that only one key was needed to operate the car. A "set" of keys thus could have consisted of multiple copies of the same key. As used in this context, this term is too ambiguous to support any reasonable distinction as to who had access to the car or whether the defendant's statements were inconsistent.

The Commonwealth also argues that testimony from Leavitt and from an insurance company adjuster indicated that the trip he took to dispose of the car must have taken more than twenty minutes and that this supports an inference that the defendant must have known of his plan because she otherwise would have become unduly suspicious about his extended absence. On direct examination, Leavitt was asked to estimate how long it took to complete each step of his trip on the night he stole the car. His response indicated that he was gone from the restaurant for twenty-five to thirty minutes. The insurance company adjuster testified that, based on his general knowledge of the area, he believed Leavitt could not have completed the trip in less than thirty to forty-two minutes.

However, the defendant's possible reaction to any extended absence of Leavitt is mere speculation by the Commonwealth. This is not sufficient to withstand the defendant's motion. See *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988), quoting *Commonwealth* v. *Ferguson*, 384 Mass. 13, 18 (1981). More-

she was attempting to cover up her guilt. The Commonwealth neglects the fact that the trooper's own testimony on cross-examination effectively eliminated any inconsistency. At most, the trooper's testimony supports inconsistent inferences concerning the defendant's guilt. This is not sufficient for a rational trier of fact to have found criminal intent on the part of the defendant beyond a reasonable doubt. See *Commonwealth* v. *Rhoades*, 379 Mass. 810, 817 (1980).

over, even viewing Leavitt's testimony in the light most favorable to the Commonwealth, see *Mandile, supra,* quoting *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979), he could have completed his trip within twenty-five minutes. A jury could equally choose to infer that this fell within the time frame of "approximately" twenty minutes, as Leavitt testified. This is inconsistent with the inference the Commonwealth urges on us. Leavitt's testimony thus is not sufficient to allow a rational trier of fact to have found criminal intent beyond a reasonable doubt. See *Commonwealth* v. *Rhoades,* 379 Mass. 810, 817 (1980).

Further, on cross-examination, the adjuster testified that he had never driven the route Leavitt actually took and that he had no personal knowledge of the traffic conditions on the night Leavitt stole the car. This testimony does not refute, and thus equally supports, the inference that Leavitt was gone from the restaurant for "approximately" twenty minutes. This is inconsistent with the inference the Commonwealth urges on us. The adjuster's testimony thus is not sufficient to allow a rational trier of fact to have found criminal intent beyond a reasonable doubt. *Id.*

Finally, the Commonwealth argues that a jury could reasonably infer that, even if Leavitt had been gone from the restaurant for about twenty minutes, he could not have known in advance that traffic conditions would have permitted him to do so. The Commonwealth argues further that this supports a reasonable inference that the defendant knew of Leavitt's plan, otherwise there would have been too great a risk that she would have become suspicious of his lengthy absence. This again is mere speculation by the Commonwealth and impermissibly piles inference on inference. See *Mandile, supra* at 94, quoting *Ferguson, supra* at 18; *Commonwealth* v. *Nicholas,* 40 Mass. App. Ct. 255, 258 (1996). Moreover, Leavitt's inability to know traffic conditions in advance equally supports the inferences that (1) if traffic had been heavy, he would have turned around, returned to the restaurant, and looked for another opportunity to steal the car; (2) he would have come up with another excuse to explain his absence; or (3) he is simply a poor planner. These inferences are inconsistent with the inferences that the Commonwealth urges on us. The evidence thus is not sufficient to allow a rational trier of fact to have found criminal intent beyond a reasonable doubt. See *Rhoades, supra.*

No other evidence that was admitted substantively at the defendant's trial (including her providing funds to Leavitt to pay his fine in New York, Leavitt's possession of her credit card when he attempted to reenter the country, or the continuation of their relationship up to the time of her trial) is sufficient to allow a rational trier of fact to find the requisite criminal intent beyond a reasonable doubt. See *Kater* v. *Commonwealth*, 421 Mass. 17, 20 (1995), citing *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Further, even if taken cumulatively, the evidence is not sufficient to allow a rational trier of fact to make the requisite finding. See *Commonwealth* v. *Carmenatty*, 37 Mass. App. Ct. 908, 910 (1994), and cases cited. As such, jeopardy has terminated for State law purposes, and requiring the defendant to stand trial again would violate this State's common-law principles of double jeopardy. See *Kater, supra* at 19, citing *Berry* v. *Commonwealth*, 393 Mass. 793, 798 (1985). We remand for the purpose of entering an order to dismiss the remaining indictments.

*So ordered.*