Following a jury-waived trial before the Superior Court, the defendant, Ruben Uribe, was found guilty of trafficking in heroin, eighteen grams or more but less than thirty-six grams, and trafficking in cocaine, eighteen grams or more but less than thirty-six grams. See G. L. c. 94C, §§ 32E(b ) & (c ). On count one (heroin), he was sentenced to a term of not less than three and one-half nor more than four years in State prison, and on count two he was sentenced to a concurrent term of not less than two nor more than three years in State prison. The theory of the Commonwealth's case was that the defendant was in constructive possession of drugs found in an apartment. The defendant, who was arrested outside of the apartment as he parked his car, had a key to the apartment on his person. There was testimony indicating that the police had observed the defendant enter the apartment on prior occasions, but that testimony did not include any statement concerning the temporal proximity between the defendant's prior visits to the apartment and the subsequent execution of a search warrant and discovery of drugs within the apartment. For the reasons that follow, we conclude that the evidence, while sufficient to support a finding that the defendant had the ability to exercise control over the apartment and its contents, was not sufficient to support an inference that the defendant had knowledge of the drugs located within the apartment. Accordingly, we reverse.
Background. On October 2, 2014, Detective James Connolly and other members of the Fitchburg police department arrived at 58-60 Intervale Road to execute a search warrant.[2] The apartment building was located in a residential neighborhood and contained approximately sixteen units. The warrant was for unit 10, which was located on the second floor of the building. The officers arrived in the vicinity of the apartment building around noon and waited for the defendant to arrive prior to executing the search warrant.[3]
Detective Connolly had previously surveilled 58-60 Intervale Road and observed the defendant entering unit 10 on "different times and dates, using a key." Detective Connolly did not specify on what dates he observed the defendant enter the apartment. The apartment was not under police surveillance on the night of October 1, or before noon on October 2, the date the search warrant was executed.
The defendant parked his car in a parking spot adjacent to the 58-60 Intervale Road apartment building just after 2:00 P.M . and was immediately detained by the police. The defendant was found with seventy-one dollars in cash and a cellular telephone on his person at the time of his arrest. The defendant also possessed a key to unit 10, but he did not live in the apartment.[4] No contraband or other incriminating evidence was found in the defendant's car.
The officers gained access to unit 10 after breaching the door. No one was inside the apartment at the time the warrant was executed. The apartment contained a kitchen area, a bathroom, and what can be considered either a living room or a bedroom containing some chairs and a television located on a television stand. The apartment was sparsely furnished and contained minimal food, clothing, and personal items. During their search of the apartment, the officers found 19.78 grams of packaged cocaine resting on the television stand and 22.22 grams of heroin contained in a black plastic bag located in the refrigerator.
At trial, the Commonwealth's expert proffered testimony describing the term "stash house" as "a location used by either an individual or an organization to store or use as a location to store narcotics, [United States] currency, or to oftentimes package narcotics for distribution." He continued by stating that stash houses have few personal items and few furnishings. He then opined that a trusted member of a criminal organization would have access to a stash house. He further stated that the quantity of drugs found in the apartment, in addition to the discovery of scales and baggies in the apartment, were consistent with drug distribution, as opposed to personal use.
The defendant was subsequently arrested and charged with trafficking in heroin, eighteen grams or more but less than thirty-six grams, and trafficking in cocaine, eighteen grams or more but less than thirty-six grams.
Discussion. The defendant argues that insufficient evidence was presented to convict him beyond a reasonable doubt of both drug trafficking offenses. We agree.
In reviewing the sufficiency of the evidence, the "question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).
In order to establish that a defendant constructively possessed contraband, the Commonwealth must present evidence sufficient to show that the defendant had knowledge of the contraband, in addition to the ability and intention to exercise dominion and control over it. Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989). "The Commonwealth may prove that the defendant had knowledge of the contraband by circumstantial evidence, if the evidence warrants a reasonable inference to that effect." Commonwealth v. Garcia, 409 Mass. 675, 686 (1991). However, evidence indicating that a defendant had access to, and was present in, a location in which contraband was found is insufficient to demonstrate that the defendant had knowledge of the contraband for the purposes of proving constructive possession, absent further incriminating evidence. See Commonwealth v. Sespedes, 442 Mass. 95, 100 (2004).
Here, the fact that the defendant had a key to the apartment and was seen entering the apartment at unspecified dates and times certainly demonstrates that the defendant had the ability to access the apartment, but it is nevertheless insufficient to prove that the defendant had knowledge of the contraband that he was charged with constructively possessing. See ibid. (holding that defendant's ability to access vacant apartment via keys found on his person, and his brief presence in apartment shortly before execution of search warrant, were, standing alone, insufficient to prove that defendant had knowledge of drugs hidden in drop ceiling for purposes of proving constructive possession). Detective Connolly provided no testimony as to the dates on which he previously saw the defendant enter the apartment, or the amount of time that elapsed between his prior observations of the defendant's entry into the apartment and the execution of the search warrant.[5] Additionally, no evidence was presented relating to the procurement of the search warrant or the defendant's previous involvement in any drug-related activity. Absent further evidence indicating when the defendant was last seen entering the apartment, or any other evidence tending to show that the defendant had knowledge of the contraband located within the apartment, concluding that the defendant had knowledge of the drugs located in the refrigerator and on the television stand amounts to improper speculation. See Corson v. Commonwealth, 428 Mass. 193, 197 (1998).[6]
Furthermore, the testimony of the Commonwealth's expert witness, in which he described sparsely furnished apartments as "stash houses" used by trusted members of criminal organizations, does not serve to "tip the scale in favor of sufficiency." Brzezinski, supra at 410, quoting from Commonwealth v. Albano, 373 Mass. 132, 134 (1977). To begin with, the expert witness never opined that unit 10 was, in fact, a stash house; nor did he opine that the defendant was a trusted member of a criminal organization. The expert's testimony required the fact finder to infer that unit 10 is a stash house, to further infer that the defendant is a trusted member of a criminal organization because he possessed a key to unit 10, and to thereby infer that he had knowledge of the contraband located in unit 10. The expert's testimony required the fact finder to "merely pile inference upon inference" in arriving at the conclusion that the defendant had knowledge of the contraband found in unit 10. Corson, supra (citations omitted).
The Commonwealth has brought no case to our attention in which the defendant's knowledge of contraband was established for the purposes of proving constructive possession based on a fact pattern similar to that presented in the case before us. Based on the foregoing, we conclude that insufficient evidence was presented to prove that the defendant had knowledge of the contraband located in the apartment for the purposes of proving constructive possession.[7]
Judgments reversed.
Findings set aside.
Judgments shall enter for the defendant.

The warrant and supporting affidavit are not in the record before us.

No explanation was given at trial as to why the officers waited for the defendant to arrive prior to executing the search warrant.

No evidence was presented indicating who paid rent or utility bills for the apartment. While being booked at the Fitchburg police station, the defendant indicated that he lived in Methuen.

We note that there had been no observation of the apartment since, at a minimum, the night before the execution of the search warrant.

While the precise location of the cocaine placed behind the television is unclear from the record, it was not in plain view and was only found after a drug-sniffing dog alerted in front of the television stand. As previously discussed, the heroin was found in a black plastic bag located inside the refrigerator.

The defendant also challenges the evidence presented to the grand jury as insufficient to establish probable cause pursuant to Commonwealth v. McCarthy, 385 Mass. 160 (1982). When reviewing the sufficiency of the evidence supporting an indictment, we view the evidence before the grand jury in the light most favorable to the Commonwealth. Commonwealth v. Rakes, 478 Mass. 22, 29 (2017). Although certainly a close case, we cannot say that the grand jury " 'heard ... no evidence whatever that would support an inference of the defendant's' guilt." Ibid., quoting from Commonwealth v. Truong Vo Tam, 49 Mass. App. Ct. 31, 37 (2000).