JOHN J. COOK *vs.* PORTIUS MOORE.

For the purpose of proving that a conveyance of property made by a bankrupt, was fraudulent under the United States bankrupt act of 1841, because made to defraud the plaintiff of his debt, evidence is admissible that the defendant entertained such fraudulent intent even before the passage of the bankrupt act.

In support of a charge that a bankrupt fraudulently concealed his property from his assignee, evidence is admissible that the notes returned by the bankrupt on his schedule of assets were against insolvent persons.

DEBT on a judgment recovered in June, 1840. The defence was a discharge under the United States bankrupt act of 1841, dated September 15th, 1843, the defendant's petition having been presented March 7th, 1842. The plaintiff alleged that said discharge was void, " because said Moore was guilty of fraud and wilful concealment of his property, viz : a note against Nathaniel Eager, for thirty dollars, which he conveyed away and concealed to defraud the plaintiff; and also that he

preferred one Thomas Moore, another creditor, by conveying to him said note, and reserving money to pay said Thomas Moore ; and further that the defendant did not return upon his schedule of property in bankruptcy, a claim of thirty dollars which he had against Thomas Moore, but collected the same for his own benefit."

At the trial in the court of common pleas, before *Byington,* J. the plaintiff offered evidence that the defendant shortly before he went into bankruptcy, held a note of about thirty dollars against said Eager, dated in December, 1841, which the defendant withheld from his creditors, and converted by him for his own benefit, or transferred by him to one of his creditors, giving such creditor a preference.

The plaintiff also offered evidence tending to show that the defendant in 1837, said he did not intend to pay the plaintiff's debt which he then held against him, but would cheat him out of it; that the defendant the same year by a bill of sale, sold and delivered certain personal property to one Sylvester Belden, Jr.; that said property was afterwards attached by the plaintiff as the property of the defendant; that the defendant encouraged said Belden to sue the plaintiff for taking said property, and promised to aid him with money to carry on the suit; that the suit was prosecuted by Belden for the benefit of the defendant, and he recovered judgment against Cook, and received from him the amount of the said judgment, and accounted to the defendant for it, and in a reference of this claim of defendant and other claims between Belden and the defendant, in January, 1842, a balance was found due to the defendant, and he took the Eager note in payment of said balance.

The plaintiff offered the evidence for the purpose of showing when and how the defendant obtained title to the Eager note, and that it was his property, and to show under what circumstances he had first expressed an intention to cheat the plaintiff out of his debt. And the plaintiff offered further evidence that the defendant said that the rest of his debts, besides what he owed Cook, did not amount to $100, and he should pay them. A witness called by the plaintiff, testified that the defendant

Cook v. Moore.

.told him he should not sign over if it was not to get rid of Cook's debt.

To all the foregoing evidence the defendant objected as not contained in any specification of fraud filed by the plaintiff, and as having no tendency to prove any fraudulent act specified. The objections were overruled and the evidence admitted by the presiding judge.

It appeared by the schedule of the defendant, returned by him in bankruptcy, that there were two notes returned as his property: one against Daniel Moore, and one against Albert Henry, being the only debts so returned by said Moore. The plaintiff offered witnesses to prove that said Moore and Henry were irresponsible men, and that said notes were of no value, and that the defendant so informed his assignee. The defendant objected to the evidence, but the objection was overruled, and the evidence admitted.

The defendant requested the presiding judge to instruct the jury that no evidence offered by the plaintiff to prove an intent on the part of the defendant to defraud him or other creditors was to be considered by them, unless it was proved to their satisfaction that at the time he had such intent, he intended to defraud them by his proceedings under the bankrupt law. The judge declined so to instruct the jury, but did instruct them that the question for them to determine was, whether at the time the defendant made the preferences or concealment of property, as the evidence tended to show he did, shortly before he went into bankruptcy, he did so in fraud of the bankrupt law, by preferring creditors, contrary to said law, or wilfully concealing his property for his own use: that proof of an intent to deprive or defraud the plaintiff of his debt, prior to the passage of the bankrupt law, would not affect or avoid his discharge; but as there was evidence tending to show that the defendant declared his purpose of going into bankruptcy was to defraud the plaintiff of his debt, and that for the purpose of showing such was his intent, the plaintiff might show a similar intent of the defendant in relation to the same debt due the plaintiff prior to the passage of said law.

A verdict having been returned for the plaintiff the defendant excepted to these instructions.

*N. T. Leonard,* for the defendant.

*G. Ashmun & W. G. Bates,* for the plaintiff.

BIGELOW, J. 1. The main objection urged by the defendant in support of these exceptions, is founded on the admission of evidence tending to prove a conveyance of property by him, designed to defraud the plaintiff of the debt demanded in this action, made prior to the enactment of the bankrupt act, and also to the admission of proof of declarations by the defendant of such fraudulent intent, made at or about the time of such conveyance. The objection is, that the evidence was irrelevant and immaterial, and had no tendency to prove the facts set out in the plaintiff's specification, upon which he sought to invalidate the defendant's discharge in bankruptcy; that under this specification the plaintiff was bound to prove a wilful concealment of property by the defendant with a fraudulent purpose, contrary to the provisions of the bankrupt act of the United States, and that evidence of a fraudulent act, or declarations of a fraudulent purpose toward his creditors by the defendant before the passage of the bankrupt act, was incompetent to prove the real point in issue between the parties. But it appears to us that this objection proceeds on quite too narrow a view of the purpose and effect of the evidence introduced at the trial. The inquiry before the jury involved two essential elements. One was the establishment of a fraudulent design on the part of the defendant towards his creditors; the other was the carrying out and fulfilment of that design through the instrumentality of the bankrupt act. To maintain the first of these propositions, as one link in the chain of evidence, proof of an intent, prior to the passage of the bankrupt act, to defraud the plaintiff of his debt by a fraudulent concealment and conveyance of his property, was clearly competent. Whenever the intent of a party forms part of the matter in issue, upon the pleadings, evidence may be given of other acts, not in issue, provided they tend to establish the intent of the party in doing the acts in question. Rosc. Crim. Ev. (3d Amer. ed.) 99. The reason for

Cook *v.* Moore.

this rule is obvious. The only mode of showing a present intent is often to be found in proof of a like intent previously entertained. The existence in the mind of a deliberate design to do a certain act, when once proved, may properly lead to the inference that the intent once harbored continued and was carried into effect by acts long subsequent to the origin of the motive by which they were prompted. Even in criminal cases, acts and declarations of a party made at a former time are admissible to prove the intent of the same person at the time of the commission of an offence. 2 Phil. Ev. (3d ed.) 498; Rosc. Crim. Ev. (3d Amer. ed.) 95. In the proof of cases involving the motives of men as influencing and giving character to their acts, it is impossible to confine the evidence within any precise limit. It must necessarily proceed by steps or stages leading to the main point in issue. In the case at bar, when the plaintiff had proved an intent on the part of the defendant to conceal his property, for the purpose of defrauding his creditors, anterioi to the passage of the bankrupt act, he had advanced one step towards the proof of the real issue before the jury, and if he satisfied the jury that this intent once harbored continued in the mind of the defendant, and was carried out by availing himself of the provisions of the bankrupt act, he had thus proved by a legitimate chain of evidence the matter set up in his specification as a ground for invalidating the defendant's discharge in bankruptcy.

2. This view of the purpose and effect of the evidence offered by the plaintiff, disposes of the objection to the instructions of the court founded upon it. They seem to have been carefully guarded and well adapted to enable the jury to apply the evidence with discrimination to the precise point which it was legally competent to prove.

3. The remaining objections to the competency of evidence admitted at the trial were not strenuously insisted on. The testimony in relation to the note of Eager seems to us to have been rightly admitted for the limited and special purpose for which it was introduced. Proof that the debts owing to the defendant, and included in his schedules in bankruptcy, were

against insolvent and irresponsible persons, was admissible. The value of the defendant's assets had a material bearing on the question whether he had honestly surrendered all his property for the benefit of his creditors, or fraudulently retained a portion of it for his own use.

*Exceptions overruled.*