COMMONWEALTH *vs.* LOUIS RUBIN & another.

Middlesex.    January 27, 1896. — March 5, 1896.

Present. FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Larceny — Indictment — Property — Possession — Variance — Venue —*
*Trespass ab initio.*

A horse was bought for A., and his servant engaged a boy to take it to him in another town. On his way the boy fell in with B., who said he would deliver the horse for him, to which the boy assented. B. then paid the boy what he was to receive from A., and the boy, who was innocent, left the horse with B., who misappropriated the horse, which afterwards was found on his premises. *Held,* that B. could be convicted upon an indictment for larceny of the horse, alleged to be the property and in the possession of A. Discussion of the rule as to *trespass ab initio.*

A person who receives an article with felonious intent in one county, and carries it into another county, may be indicted for larceny in the latter county.

INDICTMENT for the larceny, on May 4, 1895, at Natick, of a horse, the property and in the possession of Robert F. Perkins. At the trial in the Superior Court, before *Bishop*, J., the jury returned a verdict of guilty ; and the defendants alleged exceptions. The facts sufficiently appear in the opinion.

*A. T. Johnson*, for the defendants.

*F. N. Wier*, District Attorney, for the Commonwealth.

HOLMES, J. The defendants have been convicted on a count for larceny of a horse, the property and in the possession of one Perkins, in Natick, in the county of Middlesex. The question presented by the exceptions is whether the evidence justified a conviction. The horse had been bought for Perkins, and a boy had been engaged by Perkins's servant to take it from the sale stable in Boston to Framingham. On his way the boy fell in with the defendants driving, and they took him into their wagon. While driving, they said they would deliver the horse for him. He assented. They paid him what he was to receive from Perkins, and he left the horse with them at Wellesley, in the county of Norfolk. The defendants misappropriated the horse, which afterwards was found on their premises at Natick. The boy was innocent.

If the boy had converted the horse, inasmuch as it had been delivered to him by a third person and had not reached its destination, the offence would not have been larceny by reason of the ancient anomaly sanctioned by *Commonwealth* v. *King*, 9 Cush. 284, and explained in *Commonwealth* v. *Ryan*, 155 Mass. 523. But that is in consequence of the ambiguous attitude of the law toward his custody, which prevents it from regarding his conversion as a trespass. There is no such trouble when a third person converts the chattel. It is larceny equally when he takes the thing from a bailee, from a servant, or from the owner himself. *Commonwealth* v. *O'Hara*, 10 Gray, 469. *Commonwealth* v. *Lawless*, 103 Mass. 425. *Commonwealth* v. *Sullivan*, 104 Mass. 552. Of course the title had passed to Perkins, and for most purposes the possession also, and this being so, either there is no question of pleading or variance, or the statute disposes of it, if a larceny is proved. Pub. Sts. c. 214, § 14.

But the horse was delivered to the defendants, and the question remains whether their conduct falls under any recognized

exception to the requirement of a taking by trespass. One such exception is when the possession of a chattel, but not the title, is gained by a trick or fraud with intent to convert it. *Commonwealth* v. *Barry*, 124 Mass. 325. *Commonwealth* v. *Lannan*, 153 Mass. 287, 289. It may be assumed that acceptance of a chattel upon a contract or promise, with intent not to carry out the promise but to convert the chattel, is within this exception. *Commonwealth* v. *Barry*, *ubi supra.* 2 Bish. Crim. Law, (8th ed.) § 813. So that the question is narrowed to whether there was any evidence of intent at the time when the defendants received the horse, the only fact bearing upon the matter being what they did shortly afterwards. This has been settled, so far as precedent can settle it, from very early days, although the principle has been disguised in an arbitrary seeming form. The rule that, if a man abuse an authority given him by the law, he becomes a trespasser *ab initio*, although now it looks like a rule of substantive law and is limited to a certain class of cases, in its origin was only a rule of evidence by which, when such rules were few and rude, the original intent was presumed conclusively from the subsequent conduct. It seems to have applied to all cases where intent was of importance. Hill, J., in Y. B. 11 Hen. IV. 75, pl. 16 ; 13 Ed. IV. 9, pl. 5. *The Six Carpenters' case,* 8 Co. Rep. 146 a, b. See Y. B. 9 Hen. VI. 29, pl. 34. (Compare as to burglary, 1 Hale P. C. 559, 560 ; Stark. Cr. Pl. 177 ; 2 East P. C. 509, 510, 514.) This rule was mentioned in the well known case in which it was decided that a carrier breaking bulk is guilty of felony; Y. B. 13 Ed. IV. 9, pl. 5 ; and in the time of Charles II. even was thought to explain the decision there. J. Kel. 81, 82. It is true that this explanation hardly can be accepted. 2 East P. C. 696. It was repudiated by the judges who decided the case. But seemingly the reason for the repudiation was that at that time the intent of the bailee was supposed to be always immaterial, and that as yet, and indeed as late as Lord Coke and Lord Hale, no exception had been made to the general rule that delivery by the owner prevents a conversion from being felony. Y. B. 13 Ed. IV. 9, pl. 5. See 8 Co. Rep. 146 b ; 1 Hale P. C. 504 ; Y. B. 12 Ed. IV. 8, pl. 20 ; 21 Ed. IV. 75, 76, pl. 9. Probably the first suggestion that intent can be important when there is a bailment is in J. Kel. 81, 82, just cited, and there are many

cases in the past where the intent of the bailee was open to question but was not tried: e. g. *Raven's case*, J. Kel. 24; *Tunnard's case*, 2 East P. C. 687, 694. Since the law has changed or has been developed, the carrier's case in 13 Ed. IV. 9, sometimes has tended to make confusion.    2 East P. C. 695–698, c. 16, § 115.   The rule as to trespass *ab initio* having been held not to apply to bailments when the intent of the bailee made no difference, still was not applied to them after the intent was held material.   In this way it became ossified and took on the appearance of a limited and technical rule of substantive law. See *Esty* v. *Wilmot*, 15 Gray, 168; *Smith* v. *Pierce*, 110 Mass. 35, 38.   But since it has been settled that the intent may be decisive as to larceny, the less extreme and more rational proposition which led to the technical rule, namely, that the subsequent conduct is some evidence of the original intent, has been acted on frequently in England by leaving the case to the jury when the whole evidence consisted of an ambiguous receipt and a subsequent conversion.   J. Kel. 81, 82.   *Pear's case*, 2 East P. C. 685, 687.   *The King* v. *Charlewood*, 1 Leach, (4th ed.) 409; *S. C.* 2 East P. C. 689.   *Leigh's case*, 2 East P. C. 694; *S. C.* 1 Leach, (4th ed.) 411 note (a).   *Armstrong's case*, 1 Lewin, 195.   *Spence's case*, 1 Lewin, 197.   *Rex* v. *Gilbert*, 1 Moody C. C. 185.   *The Queen* v. *Cole*, 2 Cox C. C. 340.   See also *Chisser's case*, T. Raym. 275, 276, and 2 East P. C. 697, citing 2 MS. Sum. 233.   Cases like those mentioned in 1 Hawk. P. C. Larceny, c. 33, § 10, of a watchmaker stealing a watch delivered to him to clean, and the like, cannot be explained on the ground suggested, that the possession remains in the owner, but it would seem must be accounted for on the same ground as the last.   See 2 East P. C. 683, 684, c. 16, § 110.

In the case at bar, the conversion followed hard upon the receipt of the horse, and the inference is not unnatural that the intent existed from the beginning, as it is proved to have existed a very short time afterwards.   There is the less cause for anxiety upon the point, in view of the merely technical distinction between larceny and embezzlement.

Of course, if the defendants received the horse with felonious intent in Norfolk, and carried it away into Middlesex, they could be indicted in the latter county.

*Exceptions overruled.*