COMMONWEALTH vs. NORMAN OLIVER.

No. 02-P-1272.

Hampden. September 19, 2003. - April 5, 2004.

Present: PERRETTA, BROWN, & LAURENCE, JJ.

Further appellate review granted, 442 Mass. 1101 (2004).

*Larceny. Embezzlement. Practice, Criminal,* Required finding.

A District Court judge erred in denying a criminal defendant's respective motions for a required finding of not guilty at the close of the Commonwealth's case at two separate jury-waived trials, one for larceny in an amount over $250, and the other for larceny from a person sixty-five years or more of age, where the evidence in both trials was insufficient to show beyond a reasonable doubt that when the defendant took the complainants' money, for services to be rendered at either some unspecified time in the near future, or on an approximate date, he did so under false pretenses, with the intention of never providing the paid-for services, and where the evidence did not show an embezzlement. [774-776] BROWN, J., dissenting.

COMPLAINTS received and sworn to in the Springfield Division of the District Court Department on August 9 and 22, 2001.

The cases were heard separately by *John M. Payne, Jr., J.,* and were consolidated for appeal.

*David Keighley* for the defendant.

*Sidney E. Reavey,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. In two separate jury-waived trials, the defendant was found guilty, at the first trial, on a complaint charging larceny in an amount over $250, and, at the second trial, on a complaint charging larceny from a person sixty-five years or more of age. See G. L. c. 266, §§ 30 and 25(*a*), respectively.[1]

---

[1]As here relevant, the only difference between the two statutory sections, G. L. c. 266, §§ 25(*a*) and 30, is that as to the former, the Commonwealth must prove that the victim was sixty-five or more years of age. There is no dispute concerning the age of the victim on the complaint brought under § 25(*a*).

The two cases, which were tried separately but on the same day and before the same judge, have been consolidated for purposes of appeal. Because a majority of the court agrees with the defendant's claim that at each trial he was entitled to a required finding of not guilty at the close of the Commonwealth's case, we reverse the judgments and set the findings aside.

1. *The evidence.* "In reviewing the defendant's motion for a required finding of not guilty, we examine the evidence as it stood at the close of the Commonwealth's case, viewed in the light most favorable to the Commonwealth." *Commonwealth* v. *Schmieder*, 58 Mass. App. Ct. 300, 301 (2003). We do so in respect to two of the three forms of larceny within the comprehension of G. L. c. 266, § 30, see note 1, *supra*, that is, larceny by false pretenses and embezzlement. See *Commonwealth* v. *Mills*, 436 Mass. 387, 392-397 (2002).[2]

To sustain its burden of proof on a complaint based upon the crime of larceny by false pretenses, the Commonwealth must present proof that "(1) the defendant knowingly made a false statement of fact; (2) the defendant intended that the person to whom the false statement was made would rely on its truth; (3) such person did rely upon the false statement; and (4) the person parted with personal property based upon such reliance." *Commonwealth* v. *Gall*, 58 Mass. App. Ct. 278, 285-286 (2003). As for embezzlement, the Commonwealth must present evidence to show that the defendant " 'fraudulently converted' to his personal use property that was under his control by virtue of a position of 'trust or confidence' and did so with the intent to deprive the owner of the property permanently." *Commonwealth* v. *Mills*, 436 Mass. at 394, and cases therein cited. *Commonwealth* v. *Moreton*, 48 Mass. App. Ct. 215, 217 (1999).

Before relating the evidence presented by the Commonwealth at each trial, we think it important to digress and speak briefly to the dissent's view of the basis for our conclusion that the Commonwealth failed to sustain its burden of proof on both complaints. While the dissent would conclude that the evidence was sufficient on both complaints, it also voices the suspicion

---

[2]The third form, larceny from the person or "trespassory" larceny, is not at issue on either of the two complaints. See *Commonwealth* v. *Mills*, 436 Mass. at 394.

that the evidence "unsettles" us and expresses the ungrounded assumption that we are "doubtless concerned that any effort to subject business cheats to criminal liability may have unintended and unwelcome effects on commercial activity." *Post* at 776-777. Such is not the case.

Any concerns that we might have are based upon the fact that the Commonwealth either knowingly chose to go forward on criminal complaints without sufficient evidence to sustain its burden of proof or, while having sufficient evidence to proceed, failed to present it. Either alternative is cause for concern. Had sufficient evidence been presented, we would not hesitate to affirm the convictions. See, e.g., *Commonwealth* v. *Gall*, 58 Mass. App. Ct. at 285-288; *Commonwealth* v. *Lepper*, *ante* 36, 40-45 (2003).

Concerns aside, we direct our attention to the sole question raised by these appeals, that is, whether the Commonwealth sustained its burden of proving that the defendant committed the crime charged on each of the complaints.

a. *The evidence on the Tranghese complaint.* Diane Tranghese was the Commonwealth's sole witness at trial on this complaint. She testified that on July 3, 2001, she met with the defendant, a contractor, at her home and discussed with him the remodeling of her kitchen. Near the end of the meeting, Tranghese gave the defendant a cash payment of $650, the total cost of his expected services. The parties signed a receipt that described the services that the defendant was to perform, set out the cost of those services, and acknowledged that the defendant had been "paid in full." The receipt also provided "start date — will contact." Directly above that notation appeared the words "mid-August." Tranghese did not know why the words "mid-August" were on the receipt. The defendant attached his business card to the receipt. The card listed two telephone numbers, one a business number and the other a cellular telephone number. Tranghese related that she told the defendant that the cabinets to be used in the remodeling project were on back order and that she would contact him when they were delivered. At some point after their meeting on July 3, but prior to July 19, 2001, Tranghese received her cabinets and then made several unsuccessful attempts to contact the defendant.

On July 19, 2001, she went to the police. About three days later, the defendant telephoned her. For whatever reason, the prosecutor did not ask Tranghese to relate the substance of that conversation. Tranghese's complaint is dated August 9, 2001, that is, about one week earlier than mid-August.

As of the time of trial, April 25, 2002, the defendant had neither performed any work for Tranghese nor returned her payment.

b. *The evidence on the Mazza complaint.* According to the evidence presented by the Commonwealth at trial on this complaint, the defendant met with Antoinette Mazza, a person over sixty-five years of age, on July 30, 2001, for purposes of discussing repairs to rental property owned by her. Although the parties did not reach any agreement during this meeting, which took place at the rental property to be repaired, they met again at the same place on August 3. At this meeting, Mazza signed an agreement with the defendant for work to be done on the property for a total cost of $2,600. The agreement specified that the work would start on or about August 8 and would be completed on or about August 22. Next to each of these two dates is a notation indicating that the date was an approximation. The defendant attached his business card to the agreement. The card listed two telephone numbers, one of which was a cellular telephone number. Because of the hot weather, the defendant asked if he could delay commencement of the work. Mazza agreed, saying, "We'll wait until it cools down." She gave the defendant a check in the amount of $500 as a deposit. The defendant cashed the check that day.

On August 12, four days after the approximated start date set out in their agreement, Mazza called the defendant and informed him that she thought he should begin the repairs to her property. He agreed to meet with her the next day. When the defendant failed to appear at the scheduled meeting, Mazza unsuccessfully tried to reach him by telephone at the numbers appearing on the business card attached to their agreement. One number had been disconnected, and the other number was that of the defendant's landlord. Five days later, on August 17, Mazza went to the police. It was then eleven days after the approximated start date set out in the agreement. Mazza's

complaint issued on August 22, 2001, the approximated date by which the defendant was to have completed the work. Within two days before or after the date of Mazza's complaint, the defendant telephoned Mazza and spoke with her. For whatever reason, the prosecutor did not ask Mazza to relate the substance of that conversation.

As of the time of trial, April 25, 2002, the defendant had neither performed any work for Mazza nor returned her deposit.

2. *Discussion.* We speak first to the Commonwealth's evidence on Tranghese's complaint, that is, the information appearing on the face of the receipt, the two-week (perhaps less) passage of time during which Tranghese attempted to speak with the defendant, and the fact that the defendant returned her calls three days after she had gone to the police. This evidence is insufficient to show beyond a reasonable doubt that when the defendant took Tranghese's money on July 3, for services to be rendered at some unspecified time in the near future, he did so with the intention of never providing the paid-for services. Compare *Commonwealth* v. *Lepper, supra* at 40-45.

Nor does the evidence, when considered in the light most favorable to the Commonwealth, show an embezzlement. As pointed out in *Commonwealth* v. *Mills,* 436 Mass. at 394, "the existence of a confidential or fiduciary relationship between the embezzler and the victim has always been at the heart" of the crime of embezzlement. See *Commonwealth* v. *Geane,* 51 Mass. App. Ct. 149, 153 (2001). Additionally, the Commonwealth's evidence allows us to do no more than speculate as to whether the defendant ever came to possess the requisite intent to steal Tranghese's money subsequent to his receipt of it on July 3. *Commonwealth* v. *Mills, supra* (proof of embezzlement requires evidence showing that defendant fraudulently converted to his personal use property under his control by virtue of position of trust or confidence and did so with intent permanently to deprive owner of that property).

Turning to the evidence presented at trial on Mazza's complaint against the defendant, we conclude that the Commonwealth's evidence on this complaint was also insufficient to show the defendant's intent with respect to the money he

received from her on August 3, or that they had a relationship of trust and confidence as described in *Commonwealth* v. *Mills, supra.* The evidence boils down to the facts that the defendant failed to appear at the August 13 meeting, that Mazza made four attempts to contact him before going to the police on August 17, that the complaint issued on August 22 (the approximated completion date for the work), and that the defendant called Mazza two days later.[3]

The dissent's departure from our conclusion is based upon what it regards as our failure to give probative value to the defendant's "subsequent conduct," that is, our failure to consider the "fact that the defendant subsequently, even up to the day of trial, made no effort whatsoever to make reparations." *Post* at 778. See *Cook* v. *Moore*, 65 Mass. 213, 216 (1853); *Commonwealth* v. *Rubin*, 165 Mass. 453, 455-456 (1896); *Commonwealth* v. *Cardarelli*, 433 Mass. 427, 434 (2001); *Commonwealth* v. *Delong, ante* 122, 129 (2003). These cases stand for the proposition that evidence of a defendant's acts committed subsequent to the offenses for which he is charged is admissible to show intent. However, each of the cases cited by the dissent also stands for the proposition that before evidence of postcrime conduct be given any probative value, it must first be shown that such conduct is not remote in time.

The dissent erroneously relies on the absence of evidence concerning any timely effort by the defendant either to return the money to Tranghese and Mazza or to perform the agreed-upon services as a proper basis upon which to infer that as of the date of the agreements, he took their money while never intending to perform the work. While we would hardly expect the Commonwealth to present evidence of the defendant's attempt "to make reparations" during its case, we think it reasonable to expect that had the defendant in fact refused to do so, evidence of those refusals would have been forthcoming.

---

[3]It has not escaped our notice that the numbers on the card that the defendant gave to Mazza are different from those on the card he gave Tranghese. However, because the complaints were tried separately, and because the Commonwealth failed to present evidence of the different numbers at either trial, we cannot give any probative value to the fact that the defendant gave each woman different telephone numbers or to the fact of any other similarities between his transactions with Tranghese and Mazza.

Instead, we are left with the fact that both Tranghese and Mazza testified that after the complaints issued, the defendant called and spoke with them. However, the prosecutor did not ask either woman to relate the substance of her conversation with the defendant.

The dissent also concludes that the fact that Mazza could not reach the defendant at the telephone numbers he had given her twelve days earlier allows for the inference that at the time of the agreement, he knowingly gave her "bad contact information to frustrate efforts to locate him." *Post* at 779. However, the Commonwealth offered nothing to show that at the time of the agreement, the telephone numbers were "bad contact information."

Proof that allows for no more than speculation requires that a defendant's motion for a required finding of not guilty be allowed. As stated in *Commonwealth* v. *Jerome*, 56 Mass. App. Ct. 726, 732-733 (2002):

> "We recognize that knowledge or intent often cannot be proved by direct evidence, but instead must be proved by inferences drawn from evidence of relevant circumstances. See *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). Such inferences need not be necessary or inevitable, only reasonable and possible. *Corson* v. *Commonwealth*, 428 Mass. 193, 197 (1998). However, the result may not be a product of conjecture or speculation, or the piling of inference upon inference. *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988)."

3. *Conclusion.* The judgments on the complaints are reversed, and the findings are set aside. Judgment for the defendant shall enter on each of the complaints.

*So ordered.*

BROWN, J. (dissenting). What unsettles the majority here, while unspoken, is not obscure. Like the majority in *Commonwealth* v. *Moreton*, 48 Mass. App. Ct. 215, 219 (1999), a case that shares many affinities with the present action, the majority here is doubtless concerned that any effort to subject business cheats to criminal liability may have unintended and

unwelcome effects on commercial activity. As the majority concluded in *Moreton, supra* at 220, applying larceny principles to contract defaults would "burden [business] transactions . . . to the ultimate disadvantage of all the parties." Similar concerns perhaps guide the majority's view here; without question, subjecting every contractor who is late in starting a job to a larceny prosecution would have a powerful chilling effect on the building trade.

Needless to say, with respect to most business disputes, it would make little sense to substitute the crude tool of criminal prosecution for the purpose-built conventions that traditionally govern mercantile conduct. The Uniform Commercial Code, Bankruptcy Code, and civil law collectively define a comprehensive system for allocating rights and duties in business settings, and typically provide fair and adequate means of redress when deals go bad. However, that is not to say that business misconduct can never fall within the purview of the criminal law — indeed, the sharp rise in the prosecution of white collar crime in recent years strongly suggests otherwise. See Pitt & Groskaufmanis, Minimizing Corporate Criminal and Civil Liability: A Second Look at Corporate Codes of Conduct, 78 Geo. L.J. 1559, 1573-1574 (1990).

It is difficult to generalize about the types of commercial misconduct that should be deemed criminal acts. However, a key factor, as always in the criminal law, is intent. And it is on this issue that I diverge most sharply from the majority. The majority concludes that, as to both complaints, there was legally insufficient evidence to support an inference of an intent, at the time of the agreement, to keep the victims' money and not to perform the paid-for services. I think there was ample evidence here to support such an inference (or at least an inference that the defendant at some point formed such an intent) as to both complaints, but in particular with respect to the second complaint involving Antoinette Mazza. As a result, I respectfully dissent.

More than one hundred years ago, in *Commonwealth v. Rubin*, 165 Mass. 453, 456 (1896), a larceny case not unlike the one before us, Justice Holmes observed that intent is typically "decisive as to larceny," and "subsequent conduct" is good

"evidence of the original intent," particularly when the property converted is received under "ambiguous" circumstances. This is consistent with the ancient principle that "[w]henever the intent of a party forms part of the matter in issue . . . evidence may be given of other acts, not in issue, provided they tend to establish the intent of the party in doing the acts in question." *Cook* v. *Moore*, 65 Mass. 213, 216 (1853).

These basic precepts are enshrined in modern criminal law under the rubric of subsequent bad acts. As we stated recently in *Commonwealth* v. *Delong, ante* 122, 129 (2003), quoting from *Commonwealth* v. *Cardarelli*, 433 Mass. 427, 434 (2001), "[i]t is within the trial judge's discretion to admit evidence of acts committed subsequent to the offenses for which the defendant is on trial . . . [for the purpose of proving] 'intent, motive, or state of mind at the time of the crime.' " Bringing these concepts to bear on the facts here, if the inference of an intent to steal was still ambiguous at the time the arrest warrants were issued (as the majority emphasizes), the fact that the defendant subsequently, even up to the day of trial, made no effort whatsoever to make reparations, in my view erases all doubt about the defendant's intent to keep the victims' money and not to perform the paid-for services.

Moreover, it is precisely this evidence of the defendant's subsequent conduct that takes this case out of the ordinary category of simple delayed building work — and precludes our decision here from affecting the vast majority of business disputes. An honest but dilatory contractor, in these circumstances, would have made some subsequent effort to resolve these disputes in a businesslike manner.[1] That no such efforts were made, combined with the other inculpatory evidence adduced at trial, support the convictions here. The failure of the majority to weigh the evidence of the defendant's subsequent bad acts in its legal sufficiency calculus led, I believe, to the wrong result.

Finally, in my view, even without the evidence of the defendant's subsequent conduct, the evidence with respect to

---

[1]Such efforts potentially could include a bankruptcy filing, a lawful means of discharging the liability.

the second complaint was legally sufficient in any event. The defendant provided Mazza with two telephone numbers at the time he collected her money. Twelve days later Mazza attempted to get hold of the defendant using those numbers, only to discover that one was disconnected and that the other was the number of the defendant's landlord. Given the timing, the fact finder reasonably could have inferred that the defendant knowingly gave Mazza bad contact information to frustrate efforts to locate him. In combination with the other evidence, this was a sufficient basis for inferring the requisite intent to steal. See *Commonwealth* v. *Williams*, 422 Mass. 111, 121 (1996).