Commonwealth *vs.* Stuart Merry.

Suffolk. January 6, 2009. - April 16, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Constitutional Law,* Double jeopardy. *Motor Vehicle,* Homicide. *Practice, Criminal,* Double jeopardy, Required finding, Conduct of prosecutor, Argument by prosecutor. *Evidence,* Expert opinion, Exculpatory, Relevancy and materiality. *Witness,* Expert.

A criminal defendant charged with negligent vehicular homicide in violation of G. L. c. 90, § 24G (*b*), failed to demonstrate that the prohibition against double jeopardy barred his retrial on the ground that there was, at his original trial, insufficient evidence of operation or negligence to sustain a conviction [660-664]; further, the prosecutor's delay at the original trial in disclosing an expert's material and exculpatory opinion, although not rising to intentional misconduct sufficiently egregious to bar a retrial and to warrant dismissal of the matter, required that the defendant be granted a new trial [664-665]; likewise, the judge at the original trial did not err in denying the defendant's motion for a mistrial based on certain statements in the prosecutor's closing argument, which misstated the evidence but did not constitute egregious prosecutorial misconduct [665-668].

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on May 22, 2008.

The case was reported by *Cordy,* J.

*Neil Rossman (Carlene A. Pennell* with him) for the defendant.

*Paul B. Linn,* Assistant District Attorney (*Nicholas J. Walsh,* Assistant District Attorney, with him) for the Commonwealth.

Cowin, J. This case is before us on a reservation and report from a single justice of this court. The defendant was convicted by a District Court jury of negligent vehicular homicide in violation of G. L. 90, § 24G (*b*).[1] His motion for a new trial was allowed because the trial judge found that the Commonwealth

---

[1] A charge of unlicensed operation of a motor vehicle was subsequently dismissed and charges of violations of G. L. c. 89, § 4A, and G. L. c. 90, § 17 (civil traffic infractions included for procedural purposes), were filed.

failed to disclose material exculpatory evidence.[2] The defendant asserts that the prohibition against double jeopardy bars his retrial because there was insufficient evidence at his original trial to establish that he was negligently operating the vehicle.[3] In addition, the defendant claims that the prosecutor intentionally withheld exculpatory evidence, that numerous statements in the prosecutor's closing argument were improper, and that the prosecutor's actions represent misconduct sufficiently egregious to warrant dismissal apart from the question of the sufficiency of the evidence.

The Commonwealth's theory at trial was that the accident was caused by the defendant's negligence in speeding, crossing a double yellow line, and driving into the victim's automobile. The defense was that the accident occurred because the defendant was in the throes of a seizure, and was not able to control his vehicle at that time.[4] The defendant claims that there was insufficient evidence of operation or negligence to sustain a conviction under *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). We conclude that there was sufficient evidence for a jury to have convicted the defendant of negligent vehicular homicide, and that there was no misconduct warranting dismissal, but that the failure to produce exculpatory evidence requires a new trial. We therefore affirm the judge's order that the defendant be retried.

1. *Background and evidence at trial.* The accident at issue occurred in Essex County and the defendant was tried in that county. However, due to a potential conflict of interest because the defendant was a Beverly police officer, a Suffolk County assistant district attorney was assigned to the case shortly after the complaint issued, and it was he who prosecuted the case in Essex County.

We summarize the evidence at trial, in the light most favorable to the Commonwealth, focusing on evidence relevant to the defendant's attack on the sufficiency of the Commonwealth's

---

[2]The Commonwealth did not appeal the judge's decision on the motion for a new trial.

[3]The defendant appeals as well from the trial judge's denial of his repeated motions for a required finding of not guilty.

[4]The defendant also pointed out that, even if he had been sitting up, no evidence was introduced to show that a person could not experience a seizure while upright.

case.[5] On the morning of January 20, 2007, the defendant, a forty year old male, began work and, according to all of the Beverly police officers who encountered him that morning, acted normally. At approximately 9:20 A.M., the defendant stopped at a convenience store and purchased a large orange soda, which he placed in a cup holder in his police cruiser.[6] A few minutes later, after the defendant left the store parking lot and headed up a hill on Cabot Street, his cruiser accelerated rapidly. The cruiser traveled 474 to 526 feet during the eleven seconds before the accident and then crashed into the side of a parked car, killing Bonney Burns, the car's sole occupant.

Police Sergeant Deborah Ryan, the Commonwealth's accident reconstruction expert, concluded that the defendant's cruiser was traveling fifty-two to fifty-five miles per hour at the time of the impact, on a street with a speed limit of thirty miles per hour. Data from the power control module (PCM) (a monitoring computer) in the defendant's cruiser revealed that the accelerator was almost fully depressed throughout the 11.4 seconds prior to the collision and that the engine throttle was open as far as possible. In addition, during the first 3.4 seconds of the incident, the brake pedal was touched lightly. During the final eight seconds prior to the crash, there was no evidence that the brakes were used and no evidence that the antilock brake mechanism engaged. Based on her analysis of gouge marks in the road and computer reconstruction of the forces involved, Ryan concluded that the vehicles moved significantly after the impact. She opined that the defendant's cruiser rotated counterclockwise before the vehicles arrived at their final positions (the left front portion of the defendant's cruiser facing the left side portion of the victim's car).

There was no indication that the cruiser had any mechanical problems and no evidence of skid marks on the road or of evasive action prior to the collision. According to Ryan, the cruiser had failed to negotiate a curve in the road on Cabot Street and had driven straight into the victim's parked car. She could determine no cause for the accident. Ryan testified also that, of the 200

[5] We reserve specific additional details for further discussion.

[6] The defendant testified that he took one sip of the soda, that it "didn't taste right" because it was "all soda and no syrup," and that consequently he did not drink any more of the soda.

serious or fatal accidents which she had investigated, she had never seen an accident where some evasive action was not taken at the last minute unless the driver was intoxicated, was attempting to commit suicide, or had fallen asleep. Here, however, Ryan stated that the defendant had not ingested alcohol or drugs, and there was no evidence that he intended suicide. Moreover, Ryan testified that in cases where a driver falls asleep, the pressure on the accelerator decreases, in contrast to the continued pressure on the accelerator in this case. The defendant made no radio calls or cellular telephone calls while in his cruiser on the morning of the accident, and did not use the onboard computer. There was no evidence that he was drinking the orange soda.

One witness, Frederick Kelsey, testified that no one was driving the cruiser when it drove past him as he was walking on Cabot Street. He saw the cruiser accelerate past him and fail to negotiate the curve on Cabot Street before driving straight into the victim's car. He was twenty to thirty feet from the two vehicles when the collision occurred. Another witness, Heather Swan, a neighbor of the victim, was driving northbound on Cabot Street at the time of the accident. She saw the defendant's cruiser traveling quickly up Cabot Street in the right hand lane. It made a "very sharp, quick" "[almost] 90 [degree]" turn to the left immediately before crashing into the victim's car, as though the driver were trying to avoid something in the road. A third witness, Amy Munoz, was driving south on Cabot Street when the accident occurred. Munoz testified that the cruiser "turn[ed] very quickly," making a sharp, "abrupt" left turn, almost a U-turn, immediately before it hit the victim's car. Neither Munoz nor Swan indicated whether they saw someone driving the defendant's cruiser.

Munoz, Swan, and Kelsey approached the cruiser immediately after the accident. Munoz and Kelsey testified that the defendant was slumped over on the passenger side of the seat, with his feet behind the wheel on the driver's side.[7] The defendant was unconscious and his breathing was heavy and labored. The first police officer to arrive on the scene found the defendant in similar circumstances; the defendant was unresponsive to his name, bleeding from his nose and mouth, and drooling.

[7]Swan went directly to the victim's car and attempted to aid the victim; she did not look inside the cruiser.

Several other police officers responded to the accident. They noticed that the defendant, who was still lying across the passenger seat, had cuts on his face and bruising on one eye. Several officers observed that the defendant was experiencing increased difficulty breathing and was turning blue. Two officers attempted to administer oxygen to the defendant. The defendant appeared to be irritated by the oxygen on his face and began moving around on the seat and pushing one of the officer's hands away in an attempt to avoid the mask. The officers were finally able to place the oxygen mask on the defendant's face after they moved him to a sitting or semi-sitting position.

Paramedics arrived, removed the defendant from the cruiser through the driver's door, and transported him to the hospital in an ambulance. The defendant was not cooperative with the paramedics' efforts to remove him from the vehicle, nor was he cooperative in the ambulance. He was rolling around and attempting to sit up or to hold his head. He was not responsive to commands and did not respond appropriately to questions.

Blood and saliva were found on the passenger seat of the defendant's cruiser. A few drops of blood and saliva were found on the driver's side airbag. Blood was also discovered on the onboard laptop computer stand. Tests later confirmed that the blood was the defendant's. In addition, the windshield on the driver's side was observed to be damaged; the damage to the windshield was emphasized in the prosecutor's closing argument and has become a point of contention on appeal.

At the hospital, the defendant was found to be suffering from a concussion; abrasions on his knees and ankles; superficial cuts on his hands; and swelling and a laceration above the right eyelid. However, a computer tomography (CT) scan revealed no abnormalities and no indication of a seizure. Blood tests established that the defendant had not consumed alcohol or drugs. He had no medical history of seizures, fainting, or blackouts, and no cause for a seizure could be found.[8]

As stated, the defendant contended that he had suffered a seizure which caused the accident, and testified that he could not remember anything about the accident from the time he

---

[8] The defendant's medical records, introduced at trial, indicated he experienced a verified seizure in March of 2007, two months after the accident.

started heading up the hill on Cabot Street until he woke up in the emergency room. The defendant's accident reconstruction expert, Gerard Murphy, testified essentially to the same facts as those related by the Commonwealth's expert. The defendant also called a neurologist, Dr. James Lehrich, who testified about seizures and that a seizure most probably caused the accident.

After the close of the defendant's case, the Commonwealth called Dr. Daniel Hoch, also a neurologist, as a rebuttal witness. Hoch described some easily identified causes of seizures, such as bleeding in the brain and heart conditions, and said that those had been ruled out in the defendant's case. He testified that, while a seizure was not the "more likely" theory, one could not "be medically certain about what actually happened during [the accident]." On cross-examination, Hoch testified that the defendant's behavior after the accident was consistent with a seizure or a concussion, and that a seizure was a "viable medical theory." Hoch stated that if the defendant's foot had been on the accelerator at the beginning of a seizure, his stiffened body would have pushed down on the accelerator for ten to twenty seconds. Hoch testified that thirty to fifty percent of the time when a first seizure occurs, there is no medical history of seizures and no cause can be found; he also stated that seizures are frequently misdiagnosed in emergency rooms.

The defendant moved for a required finding of not guilty after the close of the Commonwealth's case, after presenting his case, and after the Commonwealth's rebuttal. These motions were denied.[9] The jury convicted the defendant of motor vehicle homicide by negligent operation.

2. *Posttrial proceedings.* The defendant filed a renewed motion for a required finding of not guilty, or in the alternative for a new trial, pursuant to Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979).[10] Six weeks after the trial, the Commonwealth's appellate attorney (who was not the trial attorney) informed the defendant by letter of statements by the two prosecutors involved in the case and by Ryan. The letter said that Ryan's opinion

---

[9]The defendant also moved for a mistrial after the prosecutor's closing argument. This motion was also denied. See part 2, *infra.*

[10]The defendant did not move separately for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).

was that the windshield damage was "most likely 'induced' by the force of the crash," and that she had found "no evidence that the defendant's head had struck the windshield." In the letter, the Commonwealth disclosed also that, prior to trial, Ryan had concluded that there was no evidence the defendant was sitting up at the time of the accident. Moreover, Ryan had informed the Essex County prosecutor that she "had not noticed any damage to the windshield consistent with the defendant's head striking it during the accident" before the case was transferred to the Suffolk County district attorney's office. At a hearing on the defendant's motion, the judge, who was also the trial judge, questioned the trial prosecutor, defense counsel, and the Commonwealth's appellate attorney regarding the contents of the letter.

According to the letter, the Essex County assistant district attorney said that he had not informed the Suffolk County prosecutor of Ryan's opinion concerning the windshield. The Suffolk County prosecutor stated that he had spoken with Ryan once before the trial, and that their conversation had focused on the evidence from the PCM (the monitoring computer) concerning the accelerator. He also stated that he suggested to Ryan that the damaged windshield and the blood on the airbag "were the best evidence that the defendant had not had a seizure," and that Ryan replied that the blood on the airbag was his "better argument." Ryan agreed that the major topic of her conversation with the Suffolk County prosecutor was the PCM data, and did not recall any conversation concerning the blood on the airbag. When the judge asked the trial prosecutor whether he deliberately avoided asking Ryan her opinion about the cause of the damage to the windshield, the prosecutor stated only that, before the trial, he had understood Ryan to mean that it was "unlikely, but not ruled out," that the damage to the windshield was caused by the defendant's head. She believed that "the blood evidence was a better argument."

The motion judge allowed the defendant's motion for a new trial because he concluded that Ryan's opinion about the damage to the windshield was both material and exculpatory. The judge found that the Essex County district attorney did not knowingly or intentionally withhold information about Ryan's report

from the trial prosecutor; rather, the judge concluded that the failure to disclose was unintentional.[11] The judge determined also that the trial prosecutor did not intentionally avoid asking Ryan questions about the cause of the damage to the windshield. The judge concluded that the prosecutor's statements at closing were "fair and reasonable" given what the prosecutor knew about the damage at the time of trial.

The defendant filed a petition for relief pursuant to G. L. c. 211, § 3, seeking to bar his retrial on double jeopardy grounds because of the purported insufficiency of the evidence or, alternatively, to have the charges dismissed because of the prosecutor's alleged misconduct. A single justice of this court reserved and reported the defendant's motion to the full court.[12]

3. *Discussion.* a. *Sufficiency of the evidence.* In certain circumstances permitting a new trial would impinge on double jeopardy protection. See *Commonwealth* v. *Murchison*, 392 Mass. 273, 276 (1984). Where the evidence at the first trial was legally insufficient to sustain a verdict, a new trial would violate the prohibition against double jeopardy and is therefore impermissible. *Corson* v. *Commonwealth*, 428 Mass. 193, 196-197, 201 (1998). *Berry* v. *Commonwealth*, 393 Mass. 793, 794, 796-798 (1985). The issue, then, is whether the evidence in this case was legally sufficient to support a conviction.

Under the familiar *Latimore* standard, the evidence is sufficient to reach the jury and a motion for a required finding of not guilty is properly denied if the evidence, viewed in the light most favorable to the Commonwealth and drawing all inferences in favor of the Commonwealth, would permit a rational jury to find each essential element of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). In considering whether the jury could find the existence of each element of the crime charged, we do not weigh the supporting evidence against conflicting evidence. *Com-*

[11]The judge emphasized the constraints on conversation between the Essex and Suffolk County prosecutors, given the Essex County prosecutor's concerns about an appearance of impropriety because of the defendant's work as a police officer in Essex County.

[12]We allow the defendant's motion to expand the record to include the transcript of the hearing before the single justice.

*monwealth* v. *Lao*, 443 Mass. 770, 779 (2005). While the inferences drawn must be reasonable, they "need not be necessary or inescapable." *Commonwealth* v. *Grandison*, 433 Mass. 135, 140-141 (2001), quoting *Commonwealth* v. *Lodge*, 431 Mass. 461, 465 (2000). That evidence is conflicting does not demand a required finding of not guilty. See *Koonce* v. *Commonwealth*, 412 Mass. 71, 75 (1992). The jury are free to believe or disbelieve any or all of the evidence they hear. *Id.* However, evidence is not sufficient if it requires piling "inference upon inference," or requires "conjecture and speculation." *Corson* v. *Commonwealth*, *supra* at 197.

Additionally, because the defendant moved for a required finding both at the close of the Commonwealth's case and again at the close of all the evidence, in each instance we consider all the evidence, viewing it in the light most favorable to the Commonwealth. See *Commonwealth* v. *Cordle*, 412 Mass. 172, 173 (1992).

Here, the Commonwealth was required to prove four elements to establish motor vehicle homicide by negligent operation: operating, negligently, on a public way, causing the death of another. See G. L. c. 90, § 24G (*b*); *Aucella* v. *Commonwealth*, 406 Mass. 415, 416 (1990). Only two elements, those of operation and negligence, were contested at trial.[13] We conclude that there was sufficient evidence of both elements for the case to have been submitted to the jury.

A person "operates" a motor vehicle who, when in the vehicle, "intentionally does any act or makes use of any mechanical or electrical agency" of the vehicle which, alone or in sequence, will set the vehicle in motion or "driv[e] the vehicle under the power of the motor machinery." *Commonwealth* v. *Ginnetti*, 400 Mass. 181, 183-184 (1987), quoting *Commonwealth* v. *Uski*, 263 Mass. 22, 24 (1928). Generally, operation and negligence are two separate elements. In this case, however, where the defense was that the defendant, through no fault of his own, lost control of the cruiser, the question is whether the defendant was operating negligently. The case turns on whether the Commonwealth produced *sufficient evidence of negligence given the defendant's*

---

[13]The parties stipulated that Cabot Street was a public way and that the accident caused the victim's death.

contention that he had been stricken by a seizure at the critical moment. Thus, evidence of whether the defendant was having a seizure will dispose of both the element of operation and the element of negligence.

Sufficient evidence was introduced for a rational jury to find beyond a reasonable doubt that the defendant was intentionally operating the vehicle during the accident. The defendant does not dispute that he was in control of the cruiser as it left the convenience store parking lot and does not contend that anyone else was in the cruiser. The jury could reasonably have inferred from the evidence that the accelerator was depressed, causing the cruiser to speed, because the defendant was consciously pushing on it, and also that the defendant attempted to use the brakes during the first part of the incident. Moreover, two witnesses testified that they observed the cruiser make a "hard," "sharp," "90 degree," or "almost a U-turn" left turn immediately before the impact. Again, the jury could reasonably have inferred, as the prosecutor argued, that making such a sharp turn of the wheel indicated that the defendant intended to do so, and was therefore directing the motion of the vehicle.

There was also sufficient evidence for a jury to determine that the defendant acted negligently by speeding, crossing the double yellow line, and driving into the victim's car. The jury could have found, as the prosecutor argued, that the defendant was bent over, distracted by something in the cruiser, as he drove past Kelsey, but that he returned to a sitting position before the impact. Alternatively, the jury could reasonably have inferred that the same situation existed, but that the defendant never sat up after bending down before the collision. Similarly, the jury could have chosen not to credit Kelsey's testimony that no one was driving the cruiser. See *Koonce* v. *Commonwealth, supra* at 75.

That contradictory evidence exists is not a sufficient basis for granting a motion for a required finding of not guilty. See *Commonwealth* v. *Pike*, 430 Mass. 317, 323-324 (1999). The jury were free, but not required, to believe the defendant's expert's testimony that the accelerator was depressed and the cruiser was speeding because the defendant's body had stiffened during the seizure. See *Commonwealth* v. *Urrea*, 443 Mass. 530, 546-547 (2005) (jury not required to believe testimony of expert over testimony of lay witness).

The defendant points out that, if the evidence introduced at trial "tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Berry* v. *Commonwealth*, 393 Mass. 793, 796 (1985), and cases cited. In such a case, a required finding of not guilty must be granted, because "[a] verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong." *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962), quoting *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400 (1940). However, the principle in *Berry* v. *Commonwealth*, *supra*, regarding evidence tending equally to support one proposition over the other applies only if the circumstances "require[] a leap of conjecture with respect to essential elements of the crime charged." *Commonwealth* v. *Chongarlides*, 62 Mass. App. Ct. 709, 712 (2004), quoting *Commonwealth* v. *Latney*, 44 Mass. App. Ct. 423, 426 (1998).

Here, if the jury chose not to believe the defendant's expert opinion regarding the likelihood that the defendant suffered a seizure, it required no conjecture or piling of inference upon inference, see *Corson* v. *Commonwealth*, *supra* at 197, for the jury to determine that the defendant was in control of the cruiser. The defendant's own expert was only able to conclude that the defendant had "most probably" suffered a seizure. There was no postaccident evidence indicative of a seizure nor evidence of a history of seizures suffered by the victim or his family. Moreover, the defendant's expert agreed that many of the defendant's symptoms immediately after the accident could have been the result of a concussion. Therefore, the jury could permissibly reject the defendant's theory and conclude that the defendant, through inattention, pushed on the accelerator at the time of the unexplained acceleration and impact.

The defendant claims also that the Commonwealth's case deteriorated after his expert's testimony, and deteriorated further after its rebuttal expert's testimony. Deterioration occurs "not because the defendant contradicted the Commonwealth's evidence . . . but because evidence for the Commonwealth necessary to warrant submission of the case to the jury is later shown to be incredible or conclusively incorrect." *Commonwealth* v. *O'Laughlin*, 446 Mass. 188, 203 (2006), quoting *Kater* v. *Commonwealth*,

421 Mass. 17, 20 (1995). Contrary to the defendant's assertion, there was no deterioration here. The defendant's neurologist testified that he believed that "most probably" the defendant suffered a seizure, while agreeing that there was no evidence of the cause of a seizure in the defendant's medical records. Although the Commonwealth's rebuttal witness, also a neurologist, testified that he could not rule out a seizure, he also testified that he did not believe that a seizure was the "more likely" explanation. Because no evidence established definitively that the defendant had suffered a seizure, the Commonwealth's case did not deteriorate.

b. *Prosecutorial misconduct.* The defendant contends that the prosecutor's failure to disclose material and exculpatory evidence, i.e., the opinion of the Commonwealth's accident reconstruction expert about the cause of the damage to the windshield, combined with statements in the prosecutor's closing argument, constitutes misconduct so egregious that dismissal of the indictment is required and that therefore a new trial is barred. See *Commonwealth* v. *Lewin,* 405 Mass. 566, 579 (1989); *Commonwealth* v. *Murchison,* 392 Mass. 273, 276 (1984); *Commonwealth* v. *Manning,* 373 Mass. 438, 444 (1977).

(i) *The exculpatory evidence.* As stated, the prosecutor did not disclose, until after the trial ended, Ryan's opinion about the damage to the windshield and her view that there was no evidence that the defendant was sitting up at the time of the accident. We agree with the judge who conducted the hearing on the defendant's motion for a new trial that Ryan's opinion was material and exculpatory. The judge therefore properly concluded that a new trial is required. See *Commonwealth* v. *Tucceri,* 412 Mass. 401, 406-408, 412-414 (1992). The Commonwealth does not dispute this conclusion.

The defendant contends that the prosecutor was aware of Ryan's opinion prior to trial, intentionally failed to reveal her exculpatory statements, and then relied in closing on his own theory that the damage to the windshield established that the defendant was sitting up at the time of the collision. Had the prosecutor deliberately failed to disclose what he understood to be exculpatory evidence, or intentionally misled the jury by making statements in his closing argument that he knew were false, his conduct

might have been grounds for dismissal. See *Commonwealth* v. *Cronk*, 396 Mass. 194, 199 (1985). However, the motion judge, who was also the trial judge and in the best position to see and evaluate the circumstances, determined that the Essex County prosecutor did not intentionally fail to inform the Suffolk County prosecutor about Ryan's exculpatory opinion, and that the trial prosecutor was unaware of Ryan's opinion at the time of trial. The judge further concluded that, because the trial prosecutor was unaware of Ryan's opinion, there was no misconduct in the prosecutor's failure to disclose the exculpatory evidence and in relying in closing on his own theory concerning the damage to the windshield. The judge's findings were warranted.

The defendant argues also that the prosecutor's omission of any questions to witnesses about the airbag and the windshield, in conjunction with statements in his closing argument about these items, requires dismissal. Photographs of the driver's side airbag with visible spots of blood, and of the damaged windshield, were introduced as trial exhibits. The prosecutor did not ask witnesses any questions about these photographs or about the source of the blood and saliva on the airbag. He also did not inquire of the accident reconstruction expert about the damage to the windshield. The judge concluded, however, that the prosecutor did not intentionally omit to ask such questions while concealing information from the defendant. We have no basis on which to disturb this finding.

(ii) *Prosecutor's closing argument.* Having disposed of the allegation that the prosecutor intentionally withheld evidence, we turn to whether, apart from the prosecutor's nondisclosure of the expert's opinion, the prosecutor, during closing argument, misstated the record as it existed. The defendant argues that the prosecutor's closing statements about the airbag and the damage to the windshield, and the inferences to be drawn from them, represent misconduct so egregious that the charges should be dismissed. While some of the prosecutor's comments were inappropriate and might themselves have warranted a new trial, the defendant will receive a new trial due to the failure to disclose exculpatory evidence. Therefore, we consider only whether the prosecutor's conduct warrants dismissal, and conclude that it does not.

We have delineated limited circumstances for dismissing a

complaint due to prosecutorial misconduct: if the Commonwealth intended to goad the defendant into moving for a mistrial, *Commonwealth* v. *Murchison, supra* at 276; if the "governmental conduct resulted in such irremediable harm that a fair trial of the complaint or indictment is no longer possible," *id.*, citing *Oregon* v. *Kennedy*, 456 U.S. 667, 676 (1982), and *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 312-313 (1984); and where the prosecutor's conduct is otherwise so egregious that dismissal is warranted to deter similar future misconduct, see *Commonwealth* v. *Cronk, supra* at 198-199; *Commonwealth* v. *Jackson*, 391 Mass. 749, 754 (1984); *Commonwealth* v. *Manning, supra* at 443-444. None of these circumstances is present here.

As the defendant points out, notwithstanding that the prosecutor did not question any witnesses about the damage to the windshield, during his closing argument, the prosecutor emphasized that the defendant was sitting up at the time of the accident and that the damage to the windshield was caused by the defendant's head. The prosecutor stated that "we know" the defendant was sitting up at the time of the accident because of the type of damage to the windshield; he then said that "a person having a seizure does not sit up." No evidence was introduced to explain how the damage to the windshield occurred, and there was no medical testimony regarding whether a person experiencing a seizure would be able to sit up during the episode. Moreover, before the trial began, the prosecutor thought it "unlikely" that the Commonwealth's expert would agree with his theory concerning the damage to the windshield.[14] The prosecutor's statement that "we know" that "a person having a seizure does not sit up" was improper. A prosecutor may not argue from facts not in evidence. *Commonwealth* v. *Fredette*, 56 Mass. App. Ct. 253, 263-264 (2002).

In addition, the prosecutor argued, based on evidence that the oxygen mask was placed on the defendant's face before the defendant sat up, that "[s]aliva comes from one place, your mouth. The only way that saliva got on the airbag is if [the defendant], his face, hit that airbag at the time of the crash." The prosecutor's statement that the "only" way the defendant's blood and saliva

---

[14]This admission by the prosecutor was made after the trial, during the hearing on the defendant's motion for a new trial. See part 2, *supra.*

could be present on the airbag was if the defendant were sitting up at the time of the collision was also improper: there was evidence that the jury could have credited that the fluids had been deposited on the airbag when the oxygen mask was placed on the defendant or when he was removed from his vehicle.[15] See *Commonwealth* v. *Coren*, 437 Mass. 723, 730-731 (2002).

A prosecutor may argue strenuously, and even with a flourish, that the jury should credit certain testimony or draw certain inferences consistent with the evidence before them. See *Commonwealth* v. *Obershaw*, 435 Mass. 794, 808 (2002); *Commonwealth* v. *Grandison*, 433 Mass. 135, 142-143 (2001), and cases cited. Some of the prosecutor's comments here, however, exceeded the bounds of permissible argument. He should not have implied that the source of the damage to the windshield was factually certain, when no evidence about the windshield other than the photograph had been introduced, and when he believed it "unlikely" that the Commonwealth's expert would agree with his theory. See *Commonwealth* v. *Coren*, *supra* at 730-731 (prosecutors must not misstate evidence and must limit scope of argument to facts in evidence and inferences reasonably to be drawn from them).

Furthermore, not only were the prosecutor's statements improper, they affected the core of the Commonwealth's case. See *Commonwealth* v. *Arroyo*, 442 Mass. 135, 147 (2004). The judge commented that the prosecutor's statements about the blood and saliva on the airbag could have been the "centerpiece" of the prosecutor's argument and that, after hearing these statements, "all of a sudden things seem[ed] to come together." The defendant objected specifically to the above statements and also moved for a mistrial based on the prosecutor's closing argument. However,

---

[15]The defendant contends that it was improper for the prosecutor to argue how the defendant's blood could be present on the airbag without expert evidence on blood splatter. Although experts are often called to explain blood splatter to the jury, see, e.g., *Commonwealth* v. *Rice*, 427 Mass. 203, 206 (1998), here the jury were equipped to draw their own conclusions about the source of the blood. See *Commonwealth* v. *DeWolfe*, 356 Mass. 719, 719 (1969); *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 135 (1875) ("It would also seem to be within the range of common knowledge to observe and understand those appearances, in marks or stains caused by blood or other fluids, which indicate the direction from which they came, if impelled by force").

as the judge concluded, nothing in the prosecutor's conduct was designed to goad the defendant into moving for a mistrial, nothing prevents the defendant from receiving a fair new trial, and there was no egregious misconduct by the prosecutor; therefore, dismissal is not required. See *Commonwealth* v. *Murchison,* *supra* at 276.

4. *Conclusion.* There was sufficient evidence introduced at the defendant's trial for a rational jury to have found beyond a reasonable doubt that the defendant was guilty of motor vehicle homicide by negligent operation. The delayed disclosure of the expert's material exculpatory opinion, however, requires that the defendant be granted a new trial.

*Order allowing motion for new trial affirmed.*