The defendant, Kevin R. Kimball, was convicted by a jury of operating a motor vehicle while under the influence of alcohol in violation of G. L. c. 90, § 24(1)(a )(1).[2] On appeal, he argues that this conviction should be reversed because (i) the trial judge abused his discretion in precluding a portion of the defendant's expert witness's testimony, (ii) the prosecutor's closing argument was improper, (iii) the trial judge's final jury charge was inadequate, and (iv) there was insufficient evidence. We affirm.
Background. Viewed in the light most favorable to the Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), the jury could reasonably have found the following facts. On the evening of April 4, 2015, Massachusetts State police Lieutenant Michael Richards observed the defendant driving over the speed limit on a public road, and pulled him over.[3] As Richards approached the driver's side window, he smelled a strong odor of alcohol emitting from the defendant's mouth, and also noticed that the defendant's eyes were red, bloodshot, and glassy. The defendant admitted consuming alcohol. Richards asked the defendant to exit the vehicle, and because there were "indications of ... intoxication" called Massachusetts State police Trooper Dean Ricciardi to come to the scene to administer field sobriety tests.
Ricciardi arrived shortly thereafter, and also noticed that the defendant had glassy eyes and smelled of alcohol. The defendant admitted that he had consumed one beer that evening. Ricciardi then administered two field sobriety tests-namely, the "nine-step walk and turn"[4] and the "one-leg stand"[5] tests. Before the tests, the defendant informed Ricciardi that he had problems with his legs from a prior motocross accident, but that he was not seeing a doctor for these issues and did not raise any concern about his ability to perform the tests. The defendant was unable to maintain his position and kept losing his balance as Ricciardi instructed him on the first test, nine-step walk and turn. When he attempted to perform that test, the defendant lost his balance three times.[6] The defendant again explained that he had "bad knees and hips," confirming also that he was not seeing a doctor for his injuries. During the one-leg stand test, the defendant was unable to stand on one leg for more than twelve seconds without losing his balance. Based on the defendant's performance and his other observations, Ricciardi formed the belief that the defendant was intoxicated.
Discussion. 1. Exclusion of expert testimony. At trial, the defendant offered the testimony of a medical expert, Dr. Le Santha Naidoo,[7] who opined that the defendant, even while sober, would have had difficulty performing the field sobriety tests because he suffered from a mild bilateral valgus deformity in his knees.[8] Dr. Naidoo officially diagnosed the defendant with that deformity during his office visit in September, 2015, five months after his arrest. On appeal, the defendant contends that the trial judge erred by excluding Dr. Naidoo's testimony regarding her observation that the defendant was unable to perform the nine-step walk and turn test during her examination of him in her office five months after his arrest.
We review a trial judge's decision to limit the scope of a proffered expert's testimony to determine whether there has been an abuse of discretion. See Commonwealth v. Johnson, 410 Mass. 199, 202 (1991). We discern no such abuse. Here, to determine the permissible scope of Dr. Naidoo's testimony, the trial judge conducted a voir dire during which Dr. Naidoo acknowledged that the defendant's performance of the field sobriety test was not part of her diagnosis; instead, she diagnosed him based solely on her visual observations of his legs.[9] Significantly, she was not trained to administer the test. Instead, she administered what she believed to be the nine-step walk and turn test, relying on a description of the test that she found on a Web site (the name of which she could not recall). She identified the Web site based on a Google search of the Internet conducted during the defendant's office visit. Under these circumstances, the trial judge acted within his discretion in limiting Dr. Naidoo's testimony. See Mass. G. Evid. § 702 (2018); Commonwealth v. Barresi, 46 Mass. App. Ct. 907, 908-909 (1999).
2. Closing argument. The defendant next contends that the prosecutor made three improper statements during closing argument. First, he objects to the prosecutor's two references to Dr. Naidoo as an "osteopathic doctor." Because this was an accurate description, there was no error. The defendant also maintains that the prosecutor improperly referred to the fact that Dr. Naidoo was retained and paid by the defendant. However, "[e]vidence of an expert's billing rate is admissible as evidence of bias, and it is appropriate to remind the jury that an expert was retained by the defendant." Commonwealth v. Bishop, 461 Mass. 586, 598 (2012). Here, Dr. Naidoo testified that she did not know whether the Commonwealth or the defendant was paying for her appearance. The prosecutor's statements properly attempted to clarify the uncontested fact that Dr. Naidoo was paid by the defendant. Cf. Commonwealth v. Shelley, 374 Mass. 466, 469-470 (1978).
Finally, the defendant contends that the prosecutor impermissibly mentioned that the defendant visited Dr. Naidoo for a medication review during a portion of his closing that recounted the night of the defendant's arrest. This reference was a proper reference to Dr. Naidoo's testimony that the defendant had visited her not for an examination of his legs, but instead, to discuss problems he was having with his medication. While the prosecutor's ordering of his discussion of this evidence may have been unartful, we fail to perceive any error.
3. Jury charge. The defendant additionally maintains that the trial judge erred by failing to instruct the jury expressly that Ricciardi provided a lay opinion, rather than an expert opinion, when he testified as to his observations of the defendant's performance on the field sobriety tests. Specifically, he contends that the lack of this specific instruction created a risk that the jury considered this testimony as expert opinion, and thus gave it undue credence. We disagree.
Here, the trial judge provided a specific instruction regarding expert opinions, during which he expressly noted that the only expert opinion that was presented was Dr. Naidoo's. With regard to Ricciardi's testimony, the judge properly instructed the jury that it was for them to decide how much weight the field sobriety tests should be given, and ultimately, whether the defendant's performance indicated that he was under the influence of alcohol. See Commonwealth v. Canty, 466 Mass. 535, 545 (2013) ; Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 389-390 (2017).
4. Sufficiency of the evidence. Viewed in the light most favorable to the Commonwealth, Latimore, 378 Mass. at 677-678, the evidence that the defendant had red, bloodshot, and glassy eyes when he was pulled over, smelled of alcohol, consumed alcohol that evening, and failed the two field sobriety tests was sufficient to support the conviction. Contrary to the defendant's argument on appeal, the jury were not required to credit Dr. Naidoo's opinion that the defendant's medical condition contributed to his performance of the sobriety tests, especially given the evidence that, prior to his arrest, he had no documented history of lower body disabilities, and Dr. Naidoo examined him to determine that he had this condition only after he told her that he had failed a field sobriety test. See Commonwealth v. Merry, 453 Mass. 653, 661 (2009) ("That evidence is conflicting does not demand a required finding of not guilty.... The jury are free to believe or disbelieve any or all of the evidence they hear").
Judgment affirmed.

The trial judge also found him responsible for speeding, a civil violation, G. L. c. 90, § 17.

The defendant was slow to stop, continuing for "some distance before stopping."

Ricciardi explained that this test involves taking nine heel-to-toe steps in a straight line, counting each step as it is taken, turning, and returning to the starting position in the same manner.

Ricciardi explained that this test involves standing on one foot, raising the other foot approximately six inches off the ground, and maintaining this position while counting thirty seconds.

Specifically, the defendant lost his balance on the first step, during the turn, and on the first step returning to the starting position.

Dr. Naidoo is an osteopathic doctor who had been the defendant's physician prior to his arrest. She examined the defendant approximately five months after his arrest.

This condition, sometimes referred to as "knock-kneed," occurs when the upper thigh does not line up correctly with the lower leg. She specifically opined that it would cause the defendant to be incapable of walking evenly in a straight line, and that it would be difficult for him to walk heel to toe.

She administered the test only after the defendant informed her that he previously had difficulties performing it.