NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-1115

COMMONWEALTH

vs.

ALEXANDER ROSARIO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial, a Juvenile Court judge found the defendant guilty as a youthful offender on indictments charging unlawful possession of a firearm (G. L. c. 269, § 10 [a]), unlawful possession of a loaded firearm (G. L. c. 269, § 10 [n]), and three counts of assault with a dangerous weapon (G. L. c. 265, § 15B [b]). On appeal, the defendant contends that the evidence at trial was insufficient to establish his identity as the person who fired gunshots at occupants of a car and asks that we vacate his convictions. We affirm.

Background. We summarize the facts in the light most favorable to the Commonwealth, reserving some details for our discussion of the sufficiency of the evidence. Commonwealth v. Lopez, 484 Mass. 211, 211 (2020).

On February 5, 2020, at about 10:53 A.M., an assailant shot twice at Jasaiah Belmont's Nissan as he drove along North Warren Avenue in Brockton with his mother and girlfriend riding as passengers.  One of the gunshots struck the window of another vehicle parked at Superior Bakery.  The assailant and two companions fled on foot along North Warren Avenue.  The gunshots activated Brockton's "ShotSpotter" system, triggering an immediate investigation.  Brockton police found two .40 caliber shell casings at the scene.  No percipient witness of the shooting saw the shooter's face.  Detectives subsequently canvassed the neighborhood for video surveillance cameras and gathered footage of the shooting and the shooter's movements throughout the morning.

Through a review of video surveillance from Fernandez Liquors, detectives identified the defendant as a customer about fifty minutes before the shooting.  Detective Ernest Bell, who was familiar with the defendant, viewed the Fernandez Liquors video and identified the defendant as the person depicted. Detectives isolated a still photograph from the video and showed it to Probation Officer Bonnie Vonasek, who was also familiar with the defendant and identified him as the person depicted. Based upon these images, the defendant appeared to be a male with a clean-shaven light complexion.  He wore distinctive clothing:  a black coat with a light brown fur-trimmed hood and

an orange lining; a dark blue, hooded sweatshirt with a white Nike logo on the front; black pants; and black sneakers. Two males accompanied him to the store. One wore light blue pants and a light blue coat. The second, with a darker complexion and some facial hair, wore a black baseball cap with a white logo, a black coat with a dark-brown fur-trimmed hood, light blue pants, and white sneakers.

With the identification of the defendant wearing this distinctive clothing in the company of two other men, detectives utilized other area surveillance video within several contiguous city blocks to develop a timeline that included the defendant's movements on the morning of the shooting. According to the surveillance videos, at about 10:00 A.M., the defendant and the two men walked south along North Warren Avenue until arriving at Fernandez Liquors where the store video recorded the defendant's facial image and his distinctive clothing. Less than ten minutes later, the defendant and the man with the baseball cap left the liquor store and walked back in the direction of their route. At about 10:36 A.M., two unknown individuals threw bricks at a BMW parked on Wyman Street, several houses from the intersection with North Warren Avenue. At about 10:47 A.M., the defendant, the man with the baseball cap, and a third male emerged from a residence on North Warren Avenue and walked a short distance (about three houses) to view the damaged BMW

3

around the corner on Wyman Street.  The defendant and the man with the baseball cap appeared as before in the surveillance video except they changed footwear, with the defendant now wearing white sneakers (instead of black) and the man with the baseball cap wearing black sneakers (instead of white).  While on the corner of Wyman Street and North Warren Avenue, the defendant, the man with the baseball cap, and the third male raised their arms and appeared to yell at the occupants of the Belmont Nissan that drove past.  The defendant's group then walked back to the residence on North Warren Avenue.  At 10:51 A.M., the man with the baseball cap and the third male emerged from the residence on North Warren Avenue, walked to the BMW, and then walked back to the corner of North Warren Avenue and Wyman Street where the defendant joined them.

At about 10:53 A.M., the Belmont Nissan returned to the corner of North Warren Avenue and Wyman Street where the defendant, the man with the baseball cap, and the third individual stood.  The defendant, wearing the same distinctive clothing from the liquor store (except for the sneakers), reached into his jacket, produced a handgun, and fired two shots at the passing Belmont Nissan.  The defendant and his two companions fled north.

Discussion.  After viewing this evidence, the trial judge denied the defense motion for a required finding of not guilty.

4

On appeal, the defendant claims the judge erred because the evidence failed to identify him as the shooter. In reviewing a challenge to the sufficiency of the evidence, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). "The relevant question is whether the evidence would permit a jury [or judge] to find guilt, not whether the evidence requires such a finding." Commonwealth v. Brown, 401 Mass. 745, 747 (1988). Upon careful review of the record, we are satisfied the evidence permitted the judge to conclude that the defendant fired the gunshots.

The Fernandez Liquors surveillance video provided critical identification evidence that ultimately linked the defendant to the shooting. Detective Bell and Probation Officer Vonasek identified the defendant as the person depicted in that video. Because of the distinctive clothing worn by the defendant, detectives utilized other area surveillance video within several contiguous city blocks to develop a timeline that traced the defendant's movements up to the time of the shooting. The videos, timeline, testimony, map, and the defendant's constant pairing with the man wearing the baseball cap all combined to

5

cabin the defendant's movements within a tight temporal and physical proximity, which would enable a fact finder to conclude that he was the shooter.  See Davis v. Commonwealth, 491 Mass. 1011, 1014 (2023) (sufficient evidence identifying shooter included inconclusive surveillance video "presented sequentially" with other circumstantial evidence "in a logical order"); Commonwealth v. Brown, 490 Mass. 171, 177 (2022) (sufficient evidence identifying shooter included "positive identification of the defendant in the surveillance video footage, a few blocks from the scene of the shooting, approximately ten minutes before the shooting took place, by two witnesses who knew him"); Baxter v. Commonwealth, 489 Mass. 504, 509 (2022) (sufficient evidence identifying shooter included video footage showing person resembling defendant driving car about six minutes before shooting occurred).

In support of his argument, the defendant points to countervailing facts.  He emphasizes the absence of physical evidence such as the firearm, fingerprints, ballistics, clothing, and "clear photographic evidence" depicting the facial features of the shooter.  He also stresses the absence of any identification from a "contemporaneous eyewitness" to the shooting and underscores the changed footwear.  In reviewing the denial of a motion for a required finding of not guilty, however, "we do not weigh the supporting evidence against

6

conflicting evidence." Commonwealth v. Merry, 453 Mass. 653, 660 (2009). "That evidence is conflicting does not demand a required finding of not guilty." Id. at 661. Also, to the extent conflicting inferences are possible from the evidence, it was for the judge "to determine where the truth lies, for the weight and credibility of the evidence [was] wholly within [her] province" as the fact finder. Commonwealth v. Lao, 443 Mass. 770, 779 (2005). We also note that the Fernandez Liquors video, unlike the other videos, did depict facial features that would enable identification. The other videos, though of lower quality, depicted the movements of very few individuals and vehicles during a limited period, and the defendant's distinctive clothing was clearly visible. This is not a case where the defendant's convictions rest on "speculation" or "conjecture." Commonwealth v. Ayala, 481 Mass. 46, 51 (2018).

Finally, the defendant makes a passing reference to the judge's failure "to instruct herself correctly in evaluating the evidence." Putting aside that the defendant does not elaborate on this contention and we therefore "need not pass upon" it, Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019), we discern nothing in the record to even suggest that

7

the judge failed to apprehend her role in evaluating the evidence or in applying the controlling law.

Judgments affirmed.

By the Court (Wolohojian, Shin & Hodgens, JJ.[1]),

*Joseph F. Stanton*

Clerk

Entered:  August 11, 2023.

---

[1] The panelists are listed in order of seniority.